UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GREAT MILL ROCK LLC ("Great Mill Rock"), CHRISTOPHER WHALEN, and ADI PEKMEZOVIC,

               Plaintiffs,

        v.

STELLEX CAPITAL MANAGEMENT LP, STELLEX CAPITAL MANAGEMENT LLC, and J. ANTHONY BRADDOCK,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:
:   Case No.  20 CV 3056
:
:
:   **COMPLAINT**
:
:
:
:
:
:
:

     Plaintiffs Great Mill Rock LLC ("Great Mill Rock"), Christopher Whalen, and Adi Pekmezovic (collectively, "Plaintiffs"), by their attorneys White & Case LLP, for their Complaint against Defendants Stellex Capital Management LP, Stellex Capital Management LLC (collectively, "Stellex" or the "Stellex Defendants"), and J. Anthony Braddock (together with Stellex, "Defendants"), allege as follows:

**<u>PRELIMINARY STATEMENT</u>**

     1.     In early 2018, Stellex induced Messrs. Whalen and Pekmezovic to leave prominent positions with another investment fund by pledging to launch a new investment fund that they would lead and manage.  Stellex ultimately failed to raise the promised new fund, and ultimately abandoned the proposed venture by mid-2019.  In the interim, Plaintiffs spent a significant amount of time independently sourcing investments largely to the benefit of Stellex, while Stellex increasingly shifted its focus away from raising the new fund.  In the summer of 2019, as it became more clear that Stellex had no intention of raising the new fund, Stellex offered Plaintiffs positions at Stellex, proposing they abandon their thriving business and discard their brand name and logo.  Plaintiffs rejected this offer and, within days, Stellex pulled the plug

and terminated the parties' interim working arrangement.  However, when Plaintiffs sought to move on and pursue their own investment fund, Stellex embarked on a systematic campaign to harass Plaintiffs and interfere with their business.  At the center of this campaign are Stellex's efforts to misappropriate Plaintiffs' intellectual property ("IP"), principally Plaintiffs' ownership



of the trademarks MILL ROCK, MILL ROCK CAPITAL, and  (the "Trademarks").  Messrs. Whalen and Pekmezovic independently conceived of and developed the Trademarks before they began working with Stellex, and only allowed Stellex a limited and revocable license to use the Trademarks while the parties were working together.  Nevertheless, Stellex has improperly asserted that it owns the Trademarks and gone so far as to file false and unauthorized submissions with the U.S. Patent and Trademark Office ("USPTO") in an effort to interfere with Plaintiffs' ownership and use of the Trademarks.  Plaintiffs require relief to confirm their ownership and protect their continued use and investment in the Trademarks.

2.       Plaintiffs have repeatedly urged Stellex to halt its malicious campaign, but Stellex has refused to stand down and continues to damage Plaintiffs' business.  Accordingly, Plaintiffs are left with no alternative but to bring this action to stop Stellex from pirating their IP rights and co-opting the goodwill and reputation of their trademark rights.  Plaintiffs bring this action against Stellex for trademark infringement, counterfeiting, unfair competition, fraudulent inducement, conversion, tortious interference with prospective economic advantage, and related claims under federal and New York statutory and common law.  Plaintiffs further bring claims against Mr. Braddock for unfair competition, conversion and tortious interference with prospective economic advantage.

## THE PARTIES

3.     Plaintiff Great Mill Rock LLC is a limited liability company duly organized and existing under the laws of the State of Delaware and based in New York, New York.  Founded by Messrs. Whalen and Pekmezovic in or about August 2018, Great Mill Rock is a growth and operations oriented private investment firm that invests in well-positioned middle market industrial businesses in North America.

4.     Plaintiff Christopher Whalen is a member and managing partner of Great Mill Rock LLC and a resident of New York, New York.

5.     Plaintiff Adi Pekmezovic is a member and managing partner of Great Mill Rock LLC and a resident of New York, New York.

6.     Defendant Stellex Capital Management LP is a limited partnership duly organized and existing under the laws of the State of Delaware and headquartered at 900 Third Avenue, 14th Floor, New York, New York.  It is a private equity firm that invests in middle-market companies in North America and Europe.

7.     Defendant Stellex Capital Management LLC is a limited liability company duly organized and existing under the laws of the State of Delaware and headquartered at 900 Third Avenue, 14th Floor, New York, New York.  It is the general partner of Defendant Stellex Capital Management LP.

8.     Defendant J. Anthony Braddock is Stellex Capital Management LP's chief financial officer and chief compliance officer and a resident of New York, New York.

## JURISDICTION AND VENUE

9.     Plaintiff brings this action for federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); federal trademark infringement and

counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); deceptive acts and practices in violation of Section 349(h) of the New York General Business Law; false advertising in violation of Section 350-e(3) of the New York General Business Law; trademark infringement, unfair competition, conversion, fraudulent inducement, and tortious interference with prospective economic advantage in violation of the common law of the State of New York; and for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the Copyright Act, 17 U.S.C. § 101 *et seq.*

10.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 because there is a substantial and concrete controversy between the parties of sufficient immediacy that warrants a declaratory judgment.

11.     This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

12.     This Court has personal jurisdiction over Defendants Stellex Capital Management LP and Stellex Capital Management LLC pursuant to New York Civil Practice Law and Rules § 301 as they are each headquartered and doing business in New York, New York.

13.     This Court has personal jurisdiction over Defendant Braddock pursuant to New York Civil Practice Law and Rules §§ 301, 302(1) and 302(2) because he is a resident of New York and because Plaintiffs' causes of action against him arise from his transaction of business within New York and his commission of tortious acts within the state.

14.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

**THE PARTIES' NEGOTIATIONS AND THE CREATION OF THE TRADEMARKS**

15.     Messrs. Whalen and Pekmezovic are both experienced investment fund managers.

16.     Beginning in the summer of 2017, Stellex Managing Partner Michael Stewart approached Mr. Pekmezovic regarding the possibility of managing a series of new private investment funds which Stellex was proposing to launch.  The parties (initially Mr. Pekmezovic and Mr. Stewart but later including Mr. Whalen and Raymond Whiteman, Managing Partner of Stellex) engaged in a number of discussions over the balance of 2017 and into early 2018. Messrs. Whalen and Pekmezovic met with Messrs. Stewart, Whiteman, and/or Braddock several times over this period, including at the restaurants Il Tinello on or about October 23, 2017, and the Modern on or about March 1, 2018, and also at Stellex's offices at 900 Third Avenue for multiple meetings during the period of late 2017 and early 2018.  Throughout this period, Messrs. Whalen and Pekmezovic repeatedly sought assurances from Messrs. Stewart and Whiteman regarding the latter's ability to raise the proposed fund.  Messrs. Stewart and Whiteman repeatedly asserted they could easily command substantial commitments from existing institutional investors.  These repeated assurances were the central reason Messrs. Whalen and Pekmezovic entertained discussions with Stellex, and ultimately agreed to leave their positions with an established firm with significant committed capital the two had already been successful investing.

17.     Mr. Stewart explained that Stellex had long followed a control-oriented private equity strategy but Stellex wanted to launch a series of new private investment funds that would employ a credit/non-control strategy (the "Proposed Stellex Funds").  According to Mr. Stewart, Stellex had achieved significant returns on its inaugural fund and, as a result, Stellex's investors were eager to increase their exposure to the firm and were fully supportive of expansion into other strategies.  Indeed, he claimed that they were demanding this.  Messrs. Stewart and Whiteman stated that Stellex would raise the capital for and invest in the new funds, and that

Stellex wanted Messrs. Whalen and Pekmezovic to lead and manage the new funds. Messrs.
Stewart and Whiteman further represented that Stellex had a highly supportive group of
investors, that Stellex could quickly raise over $250 million for the proposed new funds, and that
Stellex could do so without the help of a placement agent based solely on existing investor
relationships.

18.     From their very first conversations on the subject, Messrs. Stewart and Whiteman
consistently assured Messrs. Whalen and Pekmezovic of their ability to raise a fund. Messrs.
Stewart and Whiteman repeatedly referred to the fundraising process as a "drive by," meaning a
quick and easy process. They also asserted that the New York State Common Retirement Fund
("NYCRF"), Stellex's largest investor, would serve as the "anchor investor" for the new funds
and would contribute between $150 million and $200 million to the fund. In fact, Messrs.
Stewart and Whiteman proposed that the initial fund be $500 million instead of between $250
million and $300 million as originally suggested by Messrs. Whalen and Pekmezovic due to
NYCRF's preference to not contribute more than 50% of total commitments to a given fund.
Moreover, Messrs. Stewart and Whiteman claimed that another of their investors, Grosvenor
Capital Management, had offered to serve as a "strategic resource" for Messrs. Whalen and
Pekmezovic, and would be able to "speak for" (i.e., commit capital on behalf of) large
institutional investors. Based on the assurances provided by Messrs. Stewart and Whiteman,
Messrs. Whalen and Pekmezovic agreed to resign from their then-current positions.

19.     At the time, Messrs. Whalen and Pekmezovic had prominent, well-compensated
positions as Partners at Gamut Capital Management ("Gamut"), an established firm that had
already successfully raised $1 billion of committed capital, where they were members of the
investment committee and had already successfully deployed capital. Nevertheless, they were

interested in potentially leading and managing their own investment funds.  Thus, they entered

into discussions with Stellex about the possibility of working together, including the possibility

of Messrs. Whalen and Pekmezovic managing the new investment funds that Stellex was

proposing to raise.

20.     In or around this time in late 2017 and early 2018, Messrs. Whalen and

Pekmezovic were also planning to establish their own independent investment funds.  To that

end, in or about February 2018 Messrs. Whalen and Pekmezovic created the Trademarks,



namely, MILL ROCK, MILL ROCK CAPITAL, and  .  Messrs. Whalen and

Pekmezovic independently came up with and conceived of the name "Mill Rock" (named after a

local landmark in close proximity to Mr. Whalen's home) and developed the Trademarks,

including by retaining, paying, and working with an illustrator to design the MILL ROCK



CAPITAL logo,  .

21.     Stellex had no involvement or role in conceiving the name "Mill Rock", nor did it

have any involvement or role in the original development of the Trademarks.  Stellex also had no

involvement or role in designing the MILL ROCK CAPITAL logo.

22.     Ultimately, Messrs. Whalen and Pekmezovic decided to leave their positions at

Gamut based on Stellex's representations and promises with respect to creating and raising funds

for the Proposed Stellex Funds.  They gave notice of their resignations to Gamut on or about

February 23, 2018.

23.     On or about March 1, 2018, Stellex Capital Management LP and Messrs. Whalen

and Pekmezovic signed a memorandum of understanding (the "MOU") with respect to the

Proposed Stellex Funds. The MOU envisioned that Messrs. Whalen and Pekmezovic would be retained to "lead and manage long only credit funds focused on investing primarily in middle market healthy, stressed and distressed debt obligations . . . on behalf of Stellex and certain investors." It was anticipated that the original fund would be called Adirondack I, with successor funds named Adirondack II, Adirondack III, and so forth. The name of the entity through which Messrs. Whalen and Pekmezovic would lead and manage the funds would be named Adirondack Credit Management LP. And the name of the entity that would serve as the general partner to Adirondack Credit Management LP would be Adirondack Credit LLC.

24.     The MOU was non-binding and expressly provided that final terms were subject to documentation to be mutually agreed to by the parties.

25.     After the MOU was signed, the parties continued negotiating key commercial terms related to the proposed arrangement, including, among other things: (i) the types of investments that the proposed investment funds would engage in; (ii) the investment strategy or strategies the funds would employ; (iii) the entity or entities that would retain or employ Messrs. Whalen and Pekmezovic; (iv) whether and to what extent Messrs. Whalen and Pekmezovic would have an ownership stake in those entities; (v) how Messrs. Whalen and Pekmezovic's compensation would be structured; (vi) how the funds would be branded; (vii) the budget for the fund; (viii) the size of the fund; (ix) how the fund would be marketed and (x) how much mandate flexibility the fund would have. The strategy of the proposed new fund evolved substantially throughout the course of these discussions and was never definitively agreed upon amongst the parties.

26.     Messrs. Whalen and Pekmezovic wished to begin establishing themselves in the market as MILL ROCK and MILL ROCK CAPITAL, which were the marks and branding they

had conceived and created *prior* to executing the MOU.  Accordingly, they proposed licensing

the Trademarks to Stellex, whereby Stellex would be permitted to use the Trademarks under

their direct supervision.  Specifically, pursuant to a limited and revocable license, the parties

agreed that the investment funds that Messrs. Whalen and Pekmezovic would manage would

operate under the MILL ROCK brand.  It was understood that Messrs. Whalen and Pekmezovic

would control and have the ultimate say in how the MILL ROCK brand was used.  Indeed, in the

very first conversations Mr. Pekmezovic had with Mr. Stewart in or about August 2017 about the

potential venture, Mr. Pekmezovic insisted that he and Mr. Whalen (i) control the branding and

marketing for the funds; (ii) own any IP associated with the funds; and (iii) pick their team for

the funds.  Mr. Stewart agreed to this arrangement, and Messrs. Stewart and Whiteman reiterated

their agreement over the course of 2017 and early 2018 and abided by these terms throughout the

course of the parties' business relationship.

## THE PARTIES' INTERIM ARRANGEMENT

27.    While there was no formal agreement in place and the parties continued to

negotiate the outstanding commercial terms that would apply to any ultimate arrangement

regarding the Proposed Stellex Funds, Messrs. Whalen and Pekmezovic agreed to begin working

with Stellex on an interim basis.

28.    Specifically, Messrs. Whalen and Pekmezovic agreed to assist with establishing

the Proposed Stellex Funds, including by recruiting their team, preparing marketing materials,

developing a budget, meeting with potential investors, and otherwise assisting with fundraising.

They also agreed to grant Stellex a limited and revocable license to use the Trademarks under

their supervision.

29.     In exchange for Messrs. Whalen and Pekmezovic's services in helping to establish the Proposed Stellex Funds, Stellex agreed to pay Messrs. Whalen and Pekmezovic a fee and to provide them with administrative support and office space.  Stellex also agreed to give Messrs. Whalen and Pekmezovic an ownership stake in the entity that would ultimately manage the Proposed Stellex Funds, once established (originally named "Adirondack Credit Management LP" until its name was changed to "Mill Rock Capital Management LP").  Stellex also agreed to devote the time and attention necessary to raise the funding for the Proposed Stellex Fund, as it originally had promised it would.

30.     Additionally, as part of this interim arrangement, the parties agreed to use the brand "Mill Rock" and the Trademarks MILL ROCK, MILL ROCK CAPITAL and

 in connection with the Proposed Stellex Funds.  However, it was always understood and agreed that the Trademarks remained the separate property of Messrs. Whalen and Pekmezovic, and that any use of the Trademarks would occur under their direct supervision.

31.     The parties also agreed that Messrs. Whalen and Pekmezovic could, with their team's assistance and support, independently identify, diligence, and complete other investments, and use the MILL ROCK brand and the Trademarks in connection with these activities.  Messrs. Whalen and Pekmezovic agreed to give Stellex an opportunity to invest in any deals that they independently sourced, and Stellex agreed to cover reasonable out-of-pocket expenses (which would be reimbursed by deal proceeds in the event that a deal closed).

32.     This arrangement was to remain in effect while the parties continued to negotiate the terms related to the Proposed Stellex Funds, and the parties intended to enter into a

superseding definitive agreement concerning their respective roles in connection with the Proposed Stellex Funds.

33.     This interim arrangement was agreed to orally and was never fully memorialized in writing.

34.     Nevertheless, the parties performed under this interim arrangement (hereafter the "Oral Agreement"), with Messrs. Whalen and Pekmezovic fully performing and Stellex partially performing.  Among other things, Messrs. Whalen and Pekmezovic recruited their team, prepared marketing materials, and allowed Stellex to use the Trademarks under their direct supervision.

35.     Pursuant to the parties' agreement on use of the Trademarks, on or about March 15, 2018, Stellex arranged to change the names of the relevant fund entities to incorporate the MILL ROCK mark.  Specifically, Adirondack Credit Management LP's name was changed to Mill Rock Capital Management LP, and Adirondack Credit LLC's name was changed to Mill Rock Capital Management LLC.

36.     On or about April 30, 2018, Messrs. Whalen and Pekmezovic began working with Stellex pursuant to the Oral Agreement.

37.     For its part, Stellex only partially performed its obligations under the Oral Agreement.  Among other things, Stellex failed to provide Messrs. Whalen and Pekmezovic a promised ownership stake in Mill Rock Capital Management LP.  Stellex also failed to devote significant time or resources to the Mill Rock fundraising effort.  Stellex's repeated assurances of a "drive by" fundraising process were exposed as empty as Stellex's fundraising timeline for the Proposed Stellex Funds continued to extend.  To Messrs. Whalen and Pekmezovic's great frustration, Messrs. Stewart and Whiteman's initial target of summer 2018 to raise the requisite

funding was pushed to fall 2018, then year-end 2018, and then "sometime in 2019." Stellex also failed to consult with Messrs. Whalen and Pekmezovic on budgetary matters.

## THE CREATION OF GREAT MILL ROCK
## AND THE ORIGINAL TRADEMARK APPLICATIONS

38.     On August 13, 2018, Messrs. Whalen and Pekmezovic formed Great Mill Rock, an entity which they fully own and control. Among other reasons, Great Mill Rock was formed to (i) serve as the vehicle through which Messrs. Whalen and Pekmezovic would independently identify and perform due diligence on potential investments while negotiations concerning the Proposed Stellex Funds continued; (ii) hold Messrs. Whalen and Pekmezovic's economic interests and governance rights in the various investments that they were in the process of independently sourcing; and (iii) hold their IP, including the Trademarks.

39.     Messrs. Whalen and Pekmezovic engaged legal counsel to assist with Great Mill Rock's incorporation. Based on Stellex's existing relationship with Greenberg Traurig, LLP ("Greenberg Traurig"), as well as Mr. Whalen's prior work with the firm, Mr. Whalen engaged Greenberg Traurig to represent him and Mr. Pekmezovic in connection with the incorporation of Great Mill Rock. Greenberg Traurig associate James "Jay" S. Crenshaw (who subsequently became a Greenberg Traurig shareholder) served as the principal attorney representing and advising Messrs. Whalen and Pekmezovic on the formation of Great Mill Rock.

40.     Messrs. Whalen and Pekmezovic formed Great Mill Rock with the full knowledge and support of Stellex. For example, Mr. Braddock was repeatedly informed of Messrs. Whalen and Pekmezovic's intent to form Great Mill Rock, both verbally and via email. He not only approved of Great Mill Rock's incorporation but actively encouraged it. Stellex also agreed to pay for Greenberg Traurig's services in helping to form Great Mill Rock.

41.     Great Mill Rock was incorporated on August 13, 2018.  Mr. Crenshaw filed the incorporation papers on behalf of Messrs. Whalen and Pekmezovic.

42.     Shortly after forming Great Mill Rock, Messrs. Whalen and Pekmezovic followed through on their intent to register their IP in the name of Great Mill Rock.  Specifically, on August 16, 2018, Messrs. Whalen and Pekmezovic arranged for Great Mill Rock to file trademark applications for the Trademarks (Ser. Nos. 88/081,153 and 88/080,978, the "Original Applications") with the USPTO in connection with various financial services in Class 36.  The Original Applications were filed based on an intent-to-use the Trademarks in commerce, and named Great Mill Rock as the Trademarks' owner.

43.     As with the formation of Great Mill Rock, Messrs. Whalen and Pekmezovic retained Greenberg Traurig to advise and represent them in connection with the filing of the Original Applications on behalf of Great Mill Rock.  Greenberg Traurig shareholder Barry R. Horwitz served as the principal attorney representing and advising Plaintiffs on IP matters.  Mr. Horwitz was specifically listed as the Attorney of Record for the Original Applications, and he was entrusted with a Power of Attorney from Plaintiffs with respect to the USPTO proceedings.

44.     Stellex was well aware that the Original Applications were made on behalf of Great Mill Rock and approved this arrangement.  Specifically, Mr. Braddock approved and agreed to Great Mill Rock filing the trademark applications before the Original Applications were made, and also further confirmed and acknowledged the filing afterwards.  On or about August 2, 2018, Messrs. Whalen and Pekmezovic met with Mr. Braddock and discussed with Greenberg Traurig forming the Great Mill Rock legal entity and registering the Trademarks in the name of Great Mill Rock on behalf of Messrs. Whalen and Pekmezovic.  Mr. Braddock not only approved this arrangement, he actively encouraged it by facilitating the dialog with

Greenberg Traurig and agreeing on behalf of Stellex to pay for Greenberg Traurig's legal services in connection with forming Great Mill Rock and filling the Original Applications.

45.     After filing the Original Applications, Greenberg Traurig presented two invoices to Messrs. Whalen and Pekmezovic relating to the filings.  On September 11, 2018 Mr. Whalen provided these invoices to Mr. Braddock and Stellex's Controller, Olga Kim.  Messrs. Whalen and Pekmezovic explained to Mr. Braddock that the invoices related to the applications to register the IP on behalf of Great Mill Rock.  Mr. Braddock confirmed that the invoice would be paid by Stellex, and did not raise any issue with the Original Applications filed on behalf of Great Mill Rock.

46.     After filing the Original Applications, Greenberg Traurig and Mr. Horwitz continued to represent Plaintiffs and make filings on Great Mill Rock's behalf with the USPTO, and provided advice with respect to inquiries from the USPTO regarding the Trademarks during the application process.

47.     For example, on May 14, 2019, the USPTO issued Notices of Allowance for the Original Applications.  The deadline for Great Mill Rock to submit Statements of Use with required specimens was November 14, 2019.  Greenberg Traurig and Mr. Horwitz reported the notices and the deadlines directly to Messrs. Whalen and Pekmezovic and advised them as to how Great Mill Rock should proceed.

48.     Plaintiffs had every intention to submit Statements of Use with the required specimens before the November 14, 2019 deadline.  The submissions would have reflected that Plaintiffs have rendered various financial services in connection with the Trademarks since at least as early as October 2018.

49.     Among other things, Greenberg Traurig and Mr. Horwitz advised Plaintiffs to protect their ownership of the Trademarks by preparing and publishing a website promoting Great Mill Rock's services.  Mr. Whalen prepared the text of a MILL ROCK website for that purpose (the "Website Text").  On August 12, 2019, Mr. Horwitz reviewed a draft of a MILL ROCK website as prepared by Mr. Whalen on behalf of Great Mill Rock and advised that the Original Applications could proceed to registration once Great Mill Rock published the website. Mr. Whalen intended to publish the website at millrockcap.com, a domain name that Stellex had previously registered on godaddy.com at Plaintiffs' direction.

50.     All this was done with Stellex's full knowledge and support, and there was never any suggestion that Stellex owned the Trademarks.  Messrs. Whalen and Pekmezovic never agreed to transfer the Trademarks to Stellex and always maintained their exclusive ownership of the Trademarks.  The parties understood that Plaintiffs had merely granted Stellex a limited and revocable license to use the Trademarks under Plaintiffs' supervision.

## PLAINTIFFS COMPLETE THREE DEALS

51.     In the period following the execution of the MOU and continuing into the summer of 2019, Stellex failed to raise the proposed new funds and the parties never finalized the terms of their agreement regarding the as-yet-to-be-formed funds.  Meanwhile, Plaintiffs expended considerable time and effort to independently identify, diligence, and negotiate investment transactions, which they provided Stellex an opportunity to invest in.  Plaintiffs ultimately were successful in completing three investment transactions during this period, largely for the benefit of Stellex.

52.     The first deal involved Grammer Industries (the "Grammer Transaction"), the premier provider of bulk hazardous chemicals transportation services in the United States.  After

five months of diligence and negotiations, this deal closed in October 2018.  Stellex was

provided an opportunity to invest in the Grammer Transaction and ultimately did make a

significant investment from its own investment fund.  On information and belief, the Grammer

Transaction (including subsequent acquisitions by the underlying company) currently represents

Stellex's largest investment.

53.     Plaintiffs, operating under the Trademarks, led all aspects of the transaction,

including sourcing, due diligence, negotiations, arrangement of financing, and execution.  Stellex

had only minimal participation in the deal, meeting with management on a single occasion prior

to committing funds and playing no role in any other aspect of the transaction, either diligence or

execution-related.  As part of the transaction, and as fully agreed to by Stellex, Great Mill Rock

received certain transaction fees and entered into a management agreement with the investment

vehicle.  Significantly, Plaintiffs agreed to accept below-market economics in connection with

their role in the transaction in reliance on Stellex's assertion that taking lower fees would help to

facilitate the raising of the Proposed Stellex Funds.  Ultimately Stellex's representations proved

to be a sham, and on information and belief Stellex knew at the time that the Proposed Stellex

Funds were never going to be launched.  Indeed, on information and belief, Stellex was already

planning to launch its own second fund apart from Messrs. Whalen and Pekmezovic and

leveraged the favorable terms extracted from Messrs. Whalen and Pekmezovic to promote

Stellex's second fund with its investors.

54.     The second deal involved Cisco Industrial Services LLC (the "Cisco

Transaction"), a leading provider of equipment, services, parts, and supplies to the midstream

infrastructure, general construction, agriculture, and general industrial markets.  This deal closed

in February 2019.  Stellex was provided an opportunity to invest in the Cisco Transaction and

ultimately did make a significant investment from its own investment fund.  Plaintiffs, operating

under the Trademarks, led all aspects of the transaction, including sourcing, due diligence,

negotiations, arrangement of financing, and execution.  Stellex had little to no substantive role in

the transaction.  As with the Grammer Transaction, Great Mill Rock received certain transaction

fees and entered into a management agreement with the investment vehicle, which was all

approved by and agreed to by Stellex.  Plaintiffs also again agreed to accept below-market fees

based on Stellex's representation that it would help in raising the Proposed Stellex Funds.  As

with the Grammer Transaction, Stellex's promises proved empty and, on information and belief,

Stellex was aware at the time that the Proposed Stellex Funds were not going to happen.  As in

the case of the Grammer Transaction, Stellex achieved highly favorable investment terms for its

own investors – from whom Stellex intended to raise further funds to launch another fund apart

from Messrs. Whalen and Pekmezovic – at substantial cost to Plaintiffs.

        55.     The third deal involved Venture Metals LLC (the "Venture Transaction"), a

leading scrap metal solutions provider.  This deal closed on July 1, 2019.  As with the prior two

transactions, Stellex was offered an opportunity to invest in the deal.  Stellex, however, declined

to invest in the Venture Transaction.  Plaintiffs ultimately raised all of the money for this deal

from other sources.

        56.     The Grammer, Cisco, and Venture Transactions were not part of the Proposed

Stellex Fund and not subject to the terms of the MOU.  Rather, they were sourced and completed

by Plaintiffs pursuant to the parties' interim arrangement.  This is further demonstrated by the

fact that these three transactions – and the others that Plaintiffs worked on but did not complete –

did not fit within the MOU's contemplated investments in credit and/or non-control instruments;

nor were they executed in the context of committed investment funds from the Proposed Stellex

Funds.  For instance, in the Grammer and Venture Transactions, investors took a majority equity stake in the underlying company.  In the Cisco Transaction, Mill Rock's proposed directors represented a majority of the company's board of directors at closing.  In a meeting on or about August 2, 2019, Mr. Stewart acknowledged that none of the transactions completed by Plaintiffs – doing business as Mill Rock Capital – were consistent with the Adirondack strategy as contemplated in the MOU, specifically noting that the parties had not executed a "credit strategy."

57.     Plaintiffs were working on these transactions pursuant to the parties' interim arrangement, not the MOU, which Stellex understood and acknowledged.  For example, the economic terms for the two deals sourced by Plaintiffs that Stellex invested in (the Grammer and Cisco Transaction) were separately negotiated between Plaintiffs.  The proposed terms set out in the MOU did not apply to those transactions; the parties agreed to bespoke economic terms for those transactions.  At no point in these discussions did any party invoke or reference the MOU.

58.     In all of these completed transactions – and also the other transactions they worked on but did not close – Messrs. Whalen and Pekmezovic operated through their company, Great Mill Rock, doing business as Mill Rock Capital.

59.     Then as now, the market understood (and continues to understand) MILL ROCK CAPITAL as referring to Messrs. Whalen and Pekmezovic and their company, Great Mill Rock.  Indeed, in reporting on Great Mill Rock's deals, media coverage and press releases generally refer to Great Mill Rock – and not Stellex or any of its affiliates – as "Mill Rock Capital" and link to Great Mill Rock's website, millrock-cap.com.

60.     As a result of these deals, the other work Plaintiffs have performed, and the press coverage related thereto, the public associates the Trademarks with Plaintiffs, and believes that

Plaintiffs stand behind the quality of the services offered under the Trademarks. Plaintiffs have in fact always controlled the nature and quality of the services offered under the Trademarks.

## STELLEX ABANDONS THE PROPOSED STELLEX FUNDS

61.     Ultimately, Stellex did not raise the money to fund the Proposed Stellex Funds, and it apparently never intended to do so. Stellex's lack of commitment became apparent early in the parties' relationship. From the beginning, Stellex devoted little to no resources or attention to fundraising efforts for the nascent funds. No placement agent was hired and no progress reporting was implemented. Introductions to Stellex's investor contacts made by Messrs. Stewart and Whiteman were infrequent, opportunistic, and largely informal.

62.     Stellex's unwillingness and/or inability to raise the funds was abundantly clear by the middle of 2019. In a meeting at Stellex's offices on June 7, 2019, Messrs. Whiteman and Stewart informed Messrs. Whalen and Pekmezovic in person that Stellex's largest investor, NYCRF, would not be investing in the proposed new funds. No clear reason was ever given for this. Thus, contrary to Stellex's representations in early 2018 that persuaded Messrs. Whalen and Pekmezovic to leave their prior fund, Stellex's largest investor was not going to be the "anchor investor" in the new funds, and likely never was. In this same meeting, Stellex dropped all pretense and admitted it was not able to raise the Proposed Stellex Fund and indeed had no interest in doing so. This came as yet another shock to Messrs. Whalen and Pekmezovic, who had relied on and staked their livelihoods on Stellex's representations that it was committed to raising, and would raise, the Proposed Stellex Funds.

63.     In a meeting held at Stellex's offices on or about August 2, Stellex further confirmed it was walking away from the idea of the Proposed Stellex Funds. Mr. Whiteman advised that Stellex wanted to focus on fundraising for its own funds. Mr. Whiteman further

explained that Stellex did not want to confuse the market with simultaneous offerings, indicating that the Proposed Stellex Fund would compete with Stellex's own funds.  Mr. Stewart urged Messrs. Whalen and Pekmezovic to shutter the MILL ROCK brand, retire the MILL ROCK CAPITAL logo, disband the broader team that worked for Plaintiffs, and join Stellex as managing directors.

64.     In this same meeting, Stellex made clear it had no interest in using the Trademarks.  Mr. Stewart informed Messrs. Whalen and Pekmezovic that "Stellex has no use for the MILL ROCK brand" and "wants it to go away."  This statement and sentiment was repeated to certain of Great Mill Rock's team members in addition to Messrs. Whalen and Pekmezovic by both Mr. Stewart and Mr. Whiteman in the ensuing weeks.  At the August meeting, Mr. Stewart explained that certain of Stellex's investors including NYCRF did not see sufficient distinction between the Stellex and Mill Rock strategies and cited this as a reason for proposing the abandonment of the MILL ROCK brand.

65.     Ultimately, Messrs. Whalen and Pekmezovic declined Stellex's offers of employment, opting instead to continue to work through Great Mill Rock to establish their own independent investment fund that uses the Trademarks and their associated goodwill which Plaintiffs have spent considerable time and effort to establish and build.

## STELLEX'S ONGOING CAMPAIGN TO
## PIRATE AND MISAPPROPRIATE PLAINTIFFS' IP

66.     On August 16, 2019, Mr. Braddock notified Messrs. Whalen and Pekmezovic via letter that Stellex had decided to terminate its relationship with them and defund Mill Rock Capital Management LP.  Mr. Braddock and Stellex intentionally sent the letters to Messrs. Whalen and Pekmezovic when they were on vacation to maximize the disruption to Plaintiffs' business and further their scheme to steal the Trademarks.

67.     In sending the letters and providing notice of their intention to stop working with Plaintiffs, any license Stellex had for use of the Trademarks and Plaintiffs' other IP was immediately terminated.  Accordingly, that same day, Mr. Whalen emailed Messrs. Braddock, Whiteman, and Stewart a reminder that the MILL ROCK CAPITAL mark and the MILL ROCK CAPITAL logo are the IP of Great Mill Rock.  Mr. Whalen expressly directed that Stellex "refrain from using both, effective immediately."

68.     During this same period of time, Plaintiffs were also taking steps to protect their ownership of the Trademarks.  In accordance with Mr. Horwitz's advice on August 12, 2019, Mr. Whalen published a website promoting Great Mill Rock's services in order to further establish and build on Plaintiffs' ownership of the Trademarks and support the Original Applications.  The text of this website was based on the Website Text that Mr. Whalen had previously prepared and shared with Mr. Horwitz for his review.  Mr. Whalen published the website at millrock-cap.com on or about August 16, 2019.

69.     On August 19, 2019, Mr. Braddock emailed Messrs. Whalen and Pekmezovic asserting that Stellex owned the Trademarks.  Mr. Braddock also asserted Plaintiffs should not take "any steps to use and/or secure a registration for" the Trademarks.  Mr. Braddock's contention was totally inconsistent with the parties' prior agreements and dealings which were premised on Plaintiffs' ownership of the Trademarks, and was particularly specious given that Mr. Braddock was well aware that Great Mill Rock owned and had already applied to register the Trademarks.

70.     That same day, Mr. Whalen contacted Great Mill Rock's then-counsel, Mr. Horwitz at Greenberg Traurig, to discuss Stellex's interference with Great Mill Rock's IP, not knowing that Greenberg Traurig was actively conspiring with Stellex.  Mr. Whalen never

received a substantive response to that inquiry or subsequent follow-up emails which specifically referenced "an IP matter" and phone calls to Mr. Horwitz and Mr. Crenshaw.

71.     Unbeknownst to Plaintiffs, Stellex was colluding with Greenberg Traurig to implement a scheme to defraud the USPTO and try to steal the Trademarks.  It is clear that at the time Stellex sent the August 16 letters and Mr. Braddock sent the August 19 email to Messrs. Whalen and Pekmezovic, Stellex was already planning to misappropriate the Trademarks.  To this end, on August 28, 2019, Mr. Horwitz filed "Express Abandonments" with the USPTO that purported to abandon and withdraw the Original Applications.  The "Express Abandonments" were signed and submitted to the USPTO by Mr. Horwitz in the name of Great Mill Rock. However, the Express Abandonments were clearly filed at the direction and on behalf of Stellex. Mr. Horwitz was not authorized by Great Mill Rock to make such filings or abandon the Original Applications.  Indeed, Mr. Horwitz filed the Express Abandonments without providing any type of notice to Plaintiffs, much less receiving any authorization.  On information and belief, Mr. Horwitz was acting at the direction of Stellex and Mr. Braddock and took such action in furtherance of Stellex's efforts to steal the Trademarks and interfere with Plaintiffs' business.

72.     On the same day, Greenberg Traurig and Mr. Horwitz executed and filed two new trademark applications for the Trademarks in the name of Stellex Capital Management LLC (Ser. Nos. 88/596,768 and 88/597,742, the "Stellex Applications").  The Stellex Applications are filed on behalf of Stellex and are mirror copies of the Original Applications filed by Great Mill Rock.

73.     Mr. Horwitz and Greenberg Traurig were bound by legal, fiduciary, and ethical duties requiring them to represent and protect Great Mill Rock's interests.  At a minimum, after Stellex, Mr. Whalen, and Mr. Pekmezovic parted ways, they should have recused themselves based on what is clearly an irreconcilable conflict of interest.  Instead, Mr. Horwitz and

Greenberg Traurig took the remarkable step of purportedly abandoning Great Mill Rock's Original Applications and immediately filing the Stellex Applications on behalf of Stellex. Neither Stellex nor Greenberg Traurig had any authority or basis to abandon Great Mill Rock's Original Applications, and their actions were directly contrary to Great Mill Rock's interests and adversely impacted its rights.

74.     In addition to being improperly filed, the Stellex Applications are filled with misrepresentations and constitute a fraud on the USPTO.  Among other things, the Stellex Applications include declarations that Stellex purportedly has a *bona fide* intention to use the applied-for marks.  However, as discussed above, Stellex has repeatedly made clear that it has no intention of using the Trademarks.  By Mr. Stewart's own admission as noted above, the Trademarks directly conflict with Stellex's existing business strategy and this view is shared by Stellex's largest investor.  Accordingly, it is clear that Stellex has no intention of using the Trademarks and filed the Stellex Applications to interfere with Plaintiffs' business, including by blocking Plaintiffs from obtaining their own registrations of the Trademarks and frustrating Plaintiffs' efforts to exercise their rights to use the Trademarks.  Based on knowledge and belief, Stellex is attempting to pirate the Trademarks as a means of taking credit for Messrs. Whalen and Pekmezovic's track record on the Grammer and Cisco Transactions in the context of Stellex's own separate fundraising efforts.

75.     On September 2, 2019, immediately after discovering this misconduct, Plaintiffs revoked Mr. Horwitz's Power of Attorney.  In addition, as a precaution and to preserve rights in the Trademarks, Plaintiffs filed two new applications for the Trademarks (Ser. Nos. 88/601297 and 88/601298).

76.     The next day, Plaintiffs filed protest letters with the USPTO concerning the Stellex Applications, informing the USPTO of the misconduct by Stellex, Greenberg Traurig, and Mr. Horwitz, and asking that the Original Applications be reinstated.

77.     On September 9, 2019, Plaintiffs filed petitions with the Director of the USPTO concerning this same misconduct, asking that the Original Applications be reinstated.

78.     On September 13, 2019, Mr. Horwitz sent Plaintiffs a letter on behalf of Stellex. The letter asserted that Stellex owns the Trademarks and demanded, among other things, that Plaintiffs cease and desist using the Trademarks.  Incredibly, Stellex and Mr. Horwitz claimed that Stellex had only "recently discovered" the existence of Great Mill Rock, even though Greenberg Traurig had formed Great Mill Rock on behalf of Messrs. Whalen and Pekmezovic, and Stellex had engaged in extensive prior dealings with Great Mill Rock.  This letter also ignored Greenberg Traurig's own role in filing the Original Applications on behalf of Great Mill Rock and representing Great Mill Rock before the USPTO.

79.     The letter also revealed that Stellex was seeking to pirate the Website Text Mr. Whalen had created for the MILL ROCK website, and had purportedly filed a copyright application concerning the Website Text.  The letter alleged that Plaintiffs' use of the Website Text infringed Stellex's copyright, and demanded that Plaintiffs cease and desist from using Stellex's content and take down the millrock-cap.com website they had published (pursuant to Mr. Horwitz's advice) on August 16, 2019.

80.     Plaintiffs responded to Stellex on September 27, 2019 and highlighted Greenberg Traurig and Stellex's misconduct.  Among other things, Plaintiffs demonstrated Mr. Horwitz and Greenberg Traurig's clear conflict of interest.  Plaintiffs also reviewed their development and ownership of the Trademarks and Website Text copyright, explained how Stellex's letter grossly

mischaracterized the parties' prior dealings and the record, and described how Stellex was infringing Plaintiffs' marks by using them without authorization on its websites, including the mark ACTIV CAPITAL.  Plaintiffs demanded that Stellex cease its campaign of harassment and IP misappropriation – particularly that it:

- Cease and desist all use of Plaintiffs' IP;

- Cease and desist from prosecution of Stellex's applications with the USPTO and U.S. Copyright Office attempting to misappropriate Plaintiffs' IP;

- Confirm that it will refrain from casting doubt on Great Mill Rock's ownership of the Trademarks;

- Disable Stellex's infringing millrockcap.com website and assign the domain name to Great Mill Rock;

- Dissolve or rename Mill Rock Capital Management LP.

81.     Neither Stellex nor Greenberg Traurig provided any substantive response. However, Stellex and Greenberg Traurig apparently recognized the ethical and legal conflicts and Greenberg Traurig subsequently withdrew or was replaced.  Stellex engaged new counsel (Jonathan S. Caplan of Kramer Levin Naftalis & Frankel LLP) in the USPTO proceedings and with respect to the Stellex Applications.

82.     On March 18, 2020, Plaintiffs sent an additional letter to Stellex concerning the outstanding issues between the parties.  In response, Stellex's new counsel merely "confirm[ed] that Mr. Horowitz and Greenberg Traurig no longer represent Stellex in the above referenced matter" and stated that Stellex would respond in due course.  However, to date, Stellex has not substantively responded to any of Plaintiffs' letters.

83.     Stellex continues to display the MILL ROCK CAPITAL logo on its primary website, stellexcapital.com, as well as on millrockcap.com.  The stellexcapital.com website also inaccurately states that the MILL ROCK CAPITAL business is an affiliate of Stellex.

84.     In addition, directly above the MILL ROCK CAPITAL logo, the website
promotes "Active Capital" as an affiliate service offering, which is confusingly similar to Great
Mill Rock's registered mark, ACTIV CAPITAL, Reg. No. 5,783,988.  The ACTIV CAPITAL
registration covers various investment services, and Plaintiffs use ACTIV CAPITAL in
connection with structured capital investments that feature Great Mill Rock's value-added
partnership without requiring majority control, as an alternative to majority equity investments.
On information and belief, Stellex's use of and reference to "Active Capital" is intended to refer
to ACTIV CAPITAL, which is a registered trademark owned by Great Mill Rock, and to confuse
the market.

85.     The USPTO published the Stellex Applications on April 14, 2020.

### STELLEX'S CONTINUING EFFORTS TO
### HARASS PLAINTIFFS AND INTERFERE WITH THEIR BUSINESS

86.     Since August 2019 when the parties agreed to part ways, Plaintiffs have been
operating their own independent private investment firm under the name Great Mill Rock, doing
business as Mill Rock Capital.  The company currently has 11 team members and has reviewed
nearly 100 transactions (nearly 40 of which remain active) in the period since August 2019.  Two
of these opportunities are currently under contractual exclusivity.  Plaintiffs, through the MILL
ROCK CAPITAL brand, maintain contact with thousands of market participants, including
investment banks, business brokers, investors, executives, advisors, and financing sources.
Plaintiffs have six institutional limited partners and are currently working with many more across
its active transaction pipeline.

87.     Notwithstanding the current economic instability, Plaintiffs' business has
continued to remain strong, both with respect to the performance of current investments and
Plaintiffs' current investment opportunities.  However, Defendants' interference with Plaintiffs'

use of their Trademarks has had, and continues to have, a significant impact on Plaintiffs'

business, particularly with respect to Plaintiffs' goodwill, position in the market and ability to

raise funding from investors.

88.    In addition to the negative impact of Stellex's efforts to misappropriate Plaintiffs'

IP, Stellex has engaged in other efforts to harass Plaintiffs and interfere with their business.

89.    Among other things, Stellex has been making false assertions to the market and

current and/or potential clients that Plaintiffs do not own the Trademarks and are infringing on

Stellex's trademarks.

90.    Stellex also refused to allow Plaintiffs access to their files and withheld important

due diligence and operational information related to Plaintiffs' existing investments and other

potential investments.  Stellex also diverted both emails and physical mail clearly addressed to

Mr. Whalen, Mr. Pekmezovic, and/or Great Mill Rock.  This includes bank statements, tax

advice, franchise tax invoices, and other important and confidential documents and has resulted

in fines, penalties, and the diversion of Messrs. Whalen and Pekmezovic's attention from daily

management of their business.

91.    Stellex's refusal to allow Plaintiffs access to their files and due diligence materials

has had a particularly significant impact on Plaintiffs' business and resulted in Plaintiffs losing

out on a number of investment opportunities.  For example, as of August 2019, Plaintiffs were

engaged in exclusive negotiations with Cabot Corporation ("Cabot") concerning a potential

transaction.  After August 16, 2019, Stellex denied Plaintiffs any access to their emails and due

diligence documents.  As a consequence, Plaintiffs could not complete this transaction and lost

out on a significant investment.

92.     During this same period, Plaintiffs were also engaged in exclusive negotiations with Hub Folding Box Company, Inc. ("Hub") concerning a potential transaction.  However, Plaintiffs' ability to pursue the potential transaction with Hub was blocked by Stellex's refusal to allow Plaintiffs access to their emails and due diligence documents.

### COUNT I - FEDERAL UNFAIR
### <u>COMPETITION (AGAINST THE STELLEX DEFENDANTS)</u>

93.     Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 92 of this Complaint.

94.     The aforesaid acts of the Stellex Defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Stellex Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of the Stellex Defendants' services, goods, or other commercial activities by Plaintiffs.

95.     The aforesaid acts of the Stellex Defendants constitute use in commerce of words, terms, names, symbols, and devices, and combinations thereof; false designations of origin; false and misleading descriptions of fact; and false and misleading representations of fact in commercial advertising, or promotion that misrepresents the nature, characteristics, or qualities of the Stellex Defendants' services, goods, or other commercial activities.

96.     The aforesaid acts of the Stellex Defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

97.     The Stellex Defendants' acts have caused Plaintiff to sustain monetary damage, loss, and injury in an amount to be determined at trial.

98.     The aforesaid acts of the Stellex Defendants have caused, and are causing, great and irreparable harm to Plaintiff, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT II - FEDERAL TRADEMARK
## INFRINGEMENT (AGAINST THE STELLEX DEFENDANTS)

99.     Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 98 of this Complaint.

100.     The Stellex Defendants, without the consent of Plaintiffs, have used and continue to use in commerce marks confusingly similar, if not identical to, Great Mill Rock's registered ACTIV CAPTIAL mark in connection with the sale, offering for sale, distribution, and advertising of goods and services and such use is likely to cause confusion, or to cause mistake, or to deceive.

101.     The aforesaid acts of the Stellex Defendants constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

102.     The Stellex Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

103.     The aforesaid acts of the Stellex Defendants have caused, and are causing, great and irreparable harm to Plaintiffs and, unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT III - FEDERAL
## COUNTERFEITING (AGAINST THE STELLEX DEFENDANTS)

104.     Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 103 of this Complaint.

105.    Following the termination of any license that Plaintiffs granted to the Stellex Defendants to use the registered ACTIV CAPITAL mark, the Stellex Defendants continued to make repeated, unauthorized use of the identical ACTIV CAPITAL mark on their website millrock.imacra.com.

106.    The Stellex Defendants' sale, offering for sale, or distribution of services in connection with the ACTIV CAPITAL mark constitutes counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114(1).

107.    The Stellex Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

108.    In the alternative, the Stellex Defendants' knowing, willful, and deliberate conduct justifies the award of statutory damages against them in the maximum amount provided by law.

109.    The Stellex Defendants are likely to resume their use of Plaintiffs' registered mark and cause great and irreparable harm to Plaintiff unless permanently restrained by this Court.

## COUNT IV - DECEPTIVE ACTS AND PRACTICES
## UNDER NEW YORK LAW (AGAINST THE STELLEX DEFENDANTS)

110.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 109 of this Complaint.

111.    The Stellex Defendants have engaged in a sustained and intentional campaign to interfere with Plaintiffs' business, including by seeking to misappropriate Plaintiffs' IP, by making false assertions to the market and current and/or potential clients that Plaintiffs do not own the Trademarks and are infringing on Stellex's trademarks, and by refusing Plaintiffs access to their files and due diligence and operational information related to Plaintiffs' existing

investments and other potential investments.  As part of their campaign to steal Plaintiffs' IP, the Stellex Defendants arranged for Mr. Horwitz and Greenberg Traurig to commit a breach of trust by filing abandonments of the Original Applications in Great Mill Rock's name and filing identical applications in Stellex's name.  The Stellex Defendants have also engaged in deceptive practices and perpetrated a fraud on the USPTO by substituting the Stellex Applications in the place of the Original Applications and making untrue statements regarding their purported intent to use the applied-for marks.  Defendants' intentional misconduct has had, and continues to have, a significant negative impact on Plaintiffs' business and resulted in Plaintiffs losing out on a number of investment opportunities.

112.    The aforesaid acts of the Stellex Defendants constitute deceptive acts or practices in the conduct of business, trade, commerce, or in the furnishing of services in New York State in violation of Section 349(h) of the New York General Business Law.

113.    The aforesaid acts of the Stellex Defendants have caused and are causing consumer injury and harm to the public interest.

114.    The Stellex Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

115.    The aforesaid acts of the Stellex Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT V - FALSE ADVERTISING UNDER
## NEW YORK LAW (AGAINST THE STELLEX DEFENDANTS)

116.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 115 of this Complaint.

117.    The Stellex Defendants misleadingly advertised goods and services, in that the Stellex Defendants made statements, used words, designs, devices, sounds, or combinations thereof that failed to reveal facts material in light of such representations with respect to the subject goods and services, or under such conditions as are customary or usual.

118.    The aforesaid acts of the Stellex Defendants constitute false advertising in the conduct of business, trade, or commerce, or in the furnishing of goods or service in New York State in violation of Section 350-e(3) of the New York General Business Law.

119.    The aforesaid acts of the Stellex Defendants have caused and are causing consumer injury and harm to the public interest.

120.    The Stellex Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

121.    The aforesaid acts of the Stellex Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VI - COMMON LAW TRADEMARK INFRINGEMENT (AGAINST THE STELLEX DEFENDANTS)

122.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 121 of this Complaint.

123.    The aforesaid acts of the Stellex Defendants constitute use that is likely to cause confusion as to the source of the Stellex Defendants' goods and services.

124.    The aforesaid acts of the Stellex Defendants constitute trademark infringement in violation of common law.

125.    The Stellex Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

126.    The aforesaid acts of the Stellex Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

## COUNT VII - COMMON LAW UNFAIR
## COMPETITION (AGAINST ALL DEFENDANTS)

127.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 126 of this Complaint.

128.    The aforesaid acts of Defendants constitute use that is likely to cause confusion as to the source of Defendants' goods and services.

129.    Defendants have engaged in a sustained and intentional campaign to interfere with Plaintiffs' business, including by seeking to misappropriate Plaintiffs' IP, by making false assertions to the market and current and/or potential clients that Plaintiffs do not own the Trademarks and are infringing on Stellex's trademarks, and by refusing Plaintiffs access to their files and due diligence and operational information related to Plaintiffs' existing investments and other potential investments.  As part of their campaign to steal Plaintiffs' IP, Defendants arranged for Mr. Horwitz and Greenberg Traurig to commit a breach of trust by filing abandonments of the Original Applications in Great Mill Rock's name and filing identical applications in Stellex's name.  Defendants' intentional misconduct has had, and continues to have, a significant negative impact on Plaintiffs' business and resulted in Plaintiffs losing out on a number of investment opportunities.

130.    The aforesaid acts of Defendants constitute unfair competition in violation of common law.

131.    The aforesaid acts of Defendants constitute gross, wanton, and willful misconduct and other morally culpable conduct to an extreme degree.

132.    Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

133.    The aforesaid acts of Defendants have caused, and are causing, great and irreparable harm to Plaintiffs, and unless permanently restrained by this Court, said irreparable injury will continue.

<u>**COUNT VIII - CONVERSION (AGAINST ALL DEFENDANTS)**</u>

134.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 133 of this Complaint.

135.    The aforesaid acts of Defendants constitute conversion in violation of common law, by wrongfully misappropriating trademark applications for MILL ROCK, MILL ROCK



CAPITAL, and to the exclusion of Plaintiffs' ownership.

136.    Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

<u>**COUNT IX - DECLARATION OF TRADEMARK OWNERSHIP
AND NON-INFRINGEMENT (AGAINST THE STELLEX DEFENDANTS)**</u>

137.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 136 of this Complaint.

138.    The Stellex Defendants claim to own the Trademarks and allege that Plaintiffs infringe the Trademarks.

139.    Plaintiffs deny that its use of the Trademarks violates whatever federal or state rights the Stellex Defendants may have, or attempt to obtain, in the Trademarks, and assert that the Stellex Defendants' alleged trademark rights are invalid and unenforceable.  Use of the Trademarks by Plaintiffs is not in violation of any rights the Stellex Defendants may have

pursuant to 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), or state or common law of unfair competition.

140.     Plaintiffs' rights to the Trademarks are superior to any rights to the Trademarks alleged by the Stellex Defendants.

141.     The Stellex Defendants' assertions that Plaintiffs are violating their alleged rights to the Trademarks irreparably injures Plaintiffs and adversely affects their business and the large investment they have made in the Trademarks and attendant good will.  These assertions will continue to adversely affect Plaintiffs' business unless prevented by this Court.

142.     Accordingly, Plaintiffs request the Court, pursuant to 28 U.S.C. § 2201, *et seq.*, declare that Plaintiffs and not the Stellex Defendants own the Trademarks and that Plaintiffs have not and do not infringe the Stellex Defendants' asserted trademark rights.

### COUNT X – DECLARATION OF COPYRIGHT OWNERSHIP AND NON-INFRINGEMENT (AGAINST THE STELLEX DEFENDANTS)

143.     Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 142 of this Complaint.

144.     The Stellex Defendants claim to own the copyright for the Website Text, and allege that Plaintiffs infringe said copyright.

145.     Plaintiffs do not infringe the Stellex Defendants' claimed copyright because Plaintiffs are the owners and authors of copyright in the Website Text.

146.     Because the Stellex Defendants have threatened to take legal action to prevent Plaintiffs from using the Website Text, and a declaration by this Court that Plaintiffs own the Website Text and are not infringing the Stellex Defendants' alleged copyright will allow Plaintiffs to use the Website Text without disruption and fear of litigation, Plaintiffs are entitled to a declaratory judgment of copyright ownership and non-infringement.

## COUNT XI - FRAUDULENT
## INDUCEMENT (AGAINST THE STELLEX DEFENDANTS)

147.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 146 of this Complaint.

148.    The Stellex Defendants made the following material misrepresentations to Messrs. Whalen and Pekmezovic: (i) Stellex would create, invest in, and otherwise support the proposed new investment funds; (ii) Stellex had a highly supportive group of investors that were agitating for more exposure to the firm; (iii) fundraising would be a "drive by," meaning a quick and easy process, and Stellex could quickly raise over $250 million for the new funds without the help of a placement agent; (iv) NYCRF, Stellex's largest investor, would serve as the "anchor investor" for the new funds; and (v) Stellex was committed to resolving the outstanding issues between the parties concerning the formation of the Proposed Stellex Funds.

149.    The Stellex Defendants knew that these misrepresentations were false or acted with reckless disregard for the truth.

150.    The Stellex Defendants made these misrepresentations in order to induce Messrs. Whalen and Pekmezovic into leaving their prior employment, executing the MOU, and entering into the Oral Agreement, and Messrs. Whalen and Pekmezovic did in fact rely on these misrepresentations in leaving their prior employment, executing the MOU, and entering into the Oral Agreement.

151.    The Stellex Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

## COUNT XII - CONVERSION (AGAINST THE STELLEX DEFENDANTS)

152.    Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 151 of this Complaint.

153.     The aforesaid acts of Defendants constitute conversion in violation of common law, by wrongfully diverting Plaintiffs' mail and email, freezing their email accounts, and refusing to return their due diligence documents.

154.     Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

**COUNT XIII - TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE (AGAINST ALL DEFENDANTS)**

155.     Plaintiffs hereby reallege and incorporate by reference the allegations of Paragraphs 1 through 154 of this Complaint.

156.     As explained above, Plaintiffs had certain business relationships with third parties, including, among others, Cabot and Hub.

157.     Defendants interfered with those business relationships by, among other things, freezing Messrs. Whalen and Pekmezovic's emails, refusing Plaintiffs access to files and due diligence materials, diverting both emails and physical mail clearly addressed to Plaintiffs, holding Stellex out as MILL ROCK and MILL ROCK CAPITAL, inducing Mr. Horwitz and Greenberg Traurig to commit a breach of trust by filing abandonments of the Original Applications in Great Mill Rock's name, and prosecuting the fraudulent Stellex Applications. Defendants' misconduct has negatively impacted on Plaintiffs' business and resulted in Plaintiffs losing out on a number of investment opportunities with third parties, including Cabot and Hub.

158.     Defendants' acts have caused Plaintiffs to sustain monetary damage, loss, and injury in an amount to be determined at trial.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment as follows:

a.     Determining that the Stellex Defendants' use of the Trademarks and/or Plaintiffs'

other IP constitutes federal trademark infringement and/or counterfeiting in violation of Section 32(1) of the Lanham Act and false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, violates N.Y. Gen. Bus. Law §§ 349 and 350-e(3), and constitutes trademark infringement, unfair competition, false advertising, and deceptive acts or practices under New York statutory and/or common law;

       b.      Awarding to Plaintiffs treble their actual damages, the Stellex Defendants' profits, and costs caused by such federal trademark infringement, counterfeiting, false designation, false association, and false advertising pursuant to 15 U.S.C. §§ 1117(a) and (b);

       c.      Awarding to Plaintiffs compensatory and punitive damages in an amount to be determined at trial;

       d.      Awarding to Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, New York General Business Law §§ 349(h) and 350-e(3), and 17 U.S.C. § 505;

       e.      Awarding to Plaintiffs their taxable costs and disbursements herein as well as prejudgment interest on damages awarded;

       f.      Enjoining the Stellex Defendants from further use of the Trademarks and Plaintiffs' other IP;

       g.      Issuing an Order directing the Stellex Defendants to take affirmative steps to dispel any false suggestion of a connection to Plaintiffs by virtue of the Stellex Defendants' infringing activities, including, but not limited to, corrective advertising and the dissolution or renaming of Mill Rock Capital Management LP, Mill Rock Capital Management LLC, and any other entities under their ownership or control that include the term "Mill Rock" or any terms confusingly similar to Mill Rock;

       h.      Declaring that Plaintiffs' use of the Trademarks does not constitute infringement,

unfair competition, false advertising, or deceptive acts or practices with respect to any rights claimed by the Stellex Defendants under the Lanham Act or other federal law, state statutory law, or state common law;

        i.       Declaring that Great Mill Rock is the proper owner of the Trademarks;

        j.       Issuing an Order directing the Director of the USPTO to withdraw, annul, or disregard the "Express Abandonments" filed in connection with the Original Applications;

        k.       Issuing an Order directing the Director of the USPTO to refuse registration of the Stellex Applications; or, in the alternative, enjoining Defendants from prosecuting or pursuing registration of the Stellex Applications, pursuant to 15 U.S.C. § 1116;

        l.       Issuing an Order directing the Stellex Defendants to assign and transfer the millrockcap.com domain name, together with any other domain names and associated email addresses it may own that include the term "Mill Rock" or any terms confusingly similar to Mill Rock;

        m.       Declaring that Plaintiffs own the copyright in the Website Text and do not infringe any copyright claimed by Defendants;

        n.       Enjoining the Stellex Defendants from further prosecution of its purported copyright application for the Website Text, including replying to inquiries from the U.S. Copyright Office;

        o.       Issuing an Order directing the Stellex Defendants to provide Plaintiffs with a copy of such copyright application, the copyright application's case number, and any correspondence with the U.S. Copyright Office concerning the copyright application, and to take all necessary steps to perfect registration of the Website Text's copyright in Great Mill Rock's name, including filing a supplemental registration with the U.S. Copyright Office designating Great

Mill Rock as sole author and claimant of the copyright;

p.      Issuing an Order directing the Stellex Defendants to return Plaintiffs' documents and emails, including those materials relating to the potential investments that Plaintiffs identified and performed due diligence on; and

q.      Ordering Plaintiffs to receive such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands that all issues in this case be tried to a jury.

Dated: New York, New York
       April 15, 2020

WHITE & CASE LLP


By: _S/ Gregory M. Starner_
    Gregory M. Starner
    Alexander W. Reid
    Steven A. Levy

1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Facsimile:  (212) 354-8113
Email:       gstarner@whitecase.com
             alexander.reid@whitecase.com
             steven.levy@whitecase.com

ATTORNEYS FOR PLAINTIFFS
GREAT MILL ROCK LLC,
CHRISTOPHER WHALEN, AND
ADI PEKMEZOVIC