UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                           :

  GREAT MILL ROCK LLC, CHRISTOPHER    :
  WHALEN, and ADI PEKMEZOVIC,        :
                                           :

              Plaintiffs,          :

      - against -               :     Case No. 20 Civ. 3056 (CM)

                                           :
  STELLEX CAPITAL MANAGEMENT LP,     :
  STELLEX CAPITAL MANAGEMENT LLC,    :
  and J. ANTHONY BRADDOCK,        :
                                           :

            Defendants.        :

                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTION TO DISMISS THE COMPLAINT

KRAMER LEVIN NAFTALIS & FRANKEL LLP
John P. Coffey
Adina C. Levine
Nathan Schwartzberg
1177 Avenue of the Americas
New York, New York  10036
Tel: (212) 715-9100
Fax: (212) 715-8100
scoffey@kramerlevin.com
alevine@kramerlevin.com
nschwartzberg@kramerlevin.com

*Attorneys for Defendants Stellex Capital*
*Management LP, Stellex Capital Management LLC*
*and J. Anthony Braddock*

KL3 3300130.1

**Table of Contents**

**Page**

TABLE OF CASES ............................................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS .................................................................................. 2

    A.    The Parties ........................................................................................ 2

    B.    The Parties Execute An MOU To Govern Plaintiffs' Employment. ...................... 2

    C.    Plaintiffs Allege An Oral Agreement In Lieu Of The MOU. ................................ 3

    D.    Stellex Performs Under the MOU ...................................................................... 4

    E.    The Parties First Use the Trademarks In Connection With the Stellex Fund. ........................................................................................... 5

    F.    Stellex Terminates Plaintiffs. ............................................................................ 5

ARGUMENT ....................................................................................................... 6

I.    THE TRADEMARK CLAIMS SHOULD BE DISMISSED BECAUSE STELLEX OWNS THE TRADEMARKS AT ISSUE ......................................... 6

    A.    Count I: Federal Unfair Competition .................................................................. 7

    B.    Counts IV & V: Sections 349 and 350 of New York's General Business Law .......................................................................................... 10

    C.    Count VI: Common Law Trademark Infringement ............................................. 11

    D.    Count VII: Common Law Unfair Competition .................................................... 12

    E.    Count IX: Declaration of Trademark Ownership ................................................. 12

    F.    Count X: Declaration of Copyright Ownership ................................................... 13

    G.    Plaintiffs' Oral License Claim Fails ................................................................... 13

II.    PLAINTIFFS' ACTIV CAPITAL CLAIMS FAIL ...................................... 17

    A.    Count II: Federal Trademark Infringement ......................................................... 17

    B.    Count III: Federal Counterfeiting ....................................................................... 19

III.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION ............................................................................................... 19

IV.     IF EVALUATED HERE, PLAINTIFFS' REMAINING CLAIMS SHOULD
        NONETHELESS BE DISMISSED. ................................................................................. 20

        A.      Count VIII: Conversion ............................................................................... 20

        B.      Count XI: Fraudulent Inducement ............................................................... 20

        C.      Count XII: Conversion ................................................................................. 22

        D.      Count XIII: Tortious Interference With Prospective Economic Advantage......... 23

V.      THE COMPLAINT DOES NOT PLEAD A CLAIM AGAINST J. ANTHONY
        BRADDOCK ................................................................................................................. 24

CONCLUSION .......................................................................................................................... 25

## <u>TABLE OF CASES</u>

**Page(s)**

**Cases**

*1-800 Contacts, Inc., v. WhenuCom, Inc.*,
   414 F.3d 400 (2d Cir. 2004)...................................................................................18

*Ace Arts, LLC v. Sony/ATV Music Publ'g., LLC*,
   56 F. Supp. 3d 436 (S.D.N.Y. 2014)......................................................................24

*AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*,
   2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007)........................................................22

*Amusement Industry, Inc. v. Stern*,
   693 F.Supp.2d 327 (S.D.N.Y. 2010).......................................................................12

*Bandler v. BPCM NYC, Ltd.*,
   2014 WL 5038407 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom.*, 631 F. App'x 71
   (2d Cir. 2016)..........................................................................................................22

*Bangkok Bangkok Imp. & Exp. Inc. v. Jamtan African Am. Mkt. Corp.*,
   2016 WL 8814348 (S.D.N.Y. June 17, 2016) ........................................................20

*Brown v. Showtime Networks, Inc.*,
   394 F. Supp. 3d 418 (S.D.N.Y. 2019).....................................................................20

*C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*,
   2013 WL 6086907 (S.D.N.Y. Nov. 19, 2013)........................................................19

*Camp Summit of Summitville, Inc. v. Visinski*,
   2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007) .................................................23, 24

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988)................................................................................................19

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ...............................................................................................24

*Casper Sleep, Inc. v. Derek Hales & Halesopolis LLC*,
   2016 WL 6561386 (S.D.N.Y. Oct. 20, 2016) ..........................................................9

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*,
   531 F.2d 11 (2d Cir. 1975)......................................................................................18

*Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*,
   201 F. Supp. 3d 428 (S.D.N.Y. 2016).....................................................................19

*Colavito v. New York Organ Donor Network, Inc.*,
  8 N.Y.3d 43 (2006) ........................................................................................22

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*,
  2009 WL 935665 (S.D.N.Y. Apr. 7, 2009)........................................................16

*D & N Prop. Mgmt. & Dev. Corp., Inc., v. Copeland Companies*,
  127 F. Supp.2d 456 (S.D.N.Y. 2001) ................................................................16

*DIRECTV Latin America, LLC v. Park 610, LLC*,
  691 F.Supp.2d 405 (S.D.N.Y. 2010)................................................................13

*Ebusiness, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC*, 2009 WL
  5179535 (S.D.N.Y. Dec. 29, 2009).................................................................21

*Eenkhoorn v. N.Y. Tel. Co.*,
  148 Misc.2d 999 (1st Dep't 1990) ....................................................................6

*In re Elysium Health-Chromadex Litig.*,
  2018 WL 4907590 (S.D.N.Y. Sept. 27, 2018) ...............................................24

*Energy Intelligence Grp., Inc. v. UBS Fin. Servs., Inc.*,
  2009 WL 1490603 (S.D.N.Y. May 22, 2009) .................................................18

*ESI, Inc. v. Coastal Power Prod. Co.*,
  995 F. Supp. 419 (S.D.N.Y. 1998) ..................................................................23

*Genesee Brewing Co. v. Stroh Brewing Co.*,
  124 F.3d 137 (2d Cir.1997)..............................................................................12

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (2002) ......................................................................................11

*Grgurev v. Licul*,
  229 F. Supp. 3d 267 (S.D.N.Y. 2017).............................................................20

*Jofen v. Epoch Biosciences, Inc.*,
  2002 WL 1461351 (S.D.N.Y. July 8, 2002), *aff'd,* 62 F. App'x 410 (2d Cir.
  2003) ..........................................................................................................15, 16

*Johnson v. Magnolia Pictures LLC*,
  2019 WL 4412483 (S.D.N.Y. Sept. 16, 2019)................................................13

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)............................................................................23

*Kitty Walk Sys., Inc. v. Midnight Pass Inc.*,
  431 F.Supp.2d 306 (E.D.N.Y.2006) ..................................................................8

*Klein & Co. Futures, Inc. v. Bd. of Trade of the City of N. Y.*,
   464 F.3d 255 (2d Cir. 2006)................................................................19

*LCS Grp., LLC v. Shire Dev. LLC*,
   2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ....................................21, 22

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
   378 F.Supp.2d 448 (S.D.N.Y. 2005)...................................................12

*Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*,
   2002 WL 1560789 (S.D.N.Y. July 15, 2002) .......................................8

*MDB LLC v. Hussain*,
   2016 WL 1267793 (S.D.N.Y. Mar. 29, 2016) .................................11, 12

*Mobile Data Shred, Inc. v. United Bank of Switz.*,
   2000 WL 351516 (S.D.N.Y. Apr. 5, 2000)...........................................25

*Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*,
   198 F. Supp. 2d 474 (S.D.N.Y. 2002) ................................................11

*Onanuga v. Pfizer, Inc.*,
   2003 WL 22670842 (S.D.N.Y. Nov. 7, 2003) .....................................20

*Pandisc Music Corp. v. Red Distrib., LLC*,
   2005 WL 646216 (S.D.N.Y. Mar. 18, 2005) .......................................23

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019)................................................11

*Pullman Grp., LLC v. Prudential Ins. Co., of Am.*,
   288 A.D.2d 2 (1st Dep't 2001) ..........................................................6

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*,
   , 2015 WL 5008762 (S.D.N.Y. Aug. 24, 2015).................................11, 12

*Rodriguez v. It's Just Lunch*,
   2010 WL 685009 (S.D.N.Y. Feb. 23, 2010)........................................11

*Rpost Holdings, Inc. v. Post*,
   2011 WL 13128431 (C.D. Cal. July 12, 2011)......................................18

*Sawabeh Info. Servs. Co. v. Brody*,
   832 F. Supp. 2d 280 (S.D.N.Y. 2011)................................................14

*Silverstar Enters., Inc. v. Aday*,
   537 F. Supp. 242 (S.D.N.Y. 1982) .....................................................9

*Singer v. Xipto Inc.*,
   852 F. Supp. 2d 416 (S.D.N.Y. 2012).................................................15

KL3 3300130.1

*Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*,
2014 WL 5585339 (S.D.N.Y. Oct. 30, 2014) .................................................................. *passim*

*Sony Fin. Servs., LLC v. Multi Video Grp., Ltd.*,
2003 WL 21396690 (S.D.N.Y. June 17, 2003) .......................................................................21

*Standard Parts Co. v. Peck*,
264 U.S. 52 (1924) ...........................................................................................................6, 13

*Stone v. Sutton View Capital, LLC*,
2017 WL 6311692 (S.D.N.Y. Dec. 8, 2017) ........................................................................21

*Talk To Me Prods., Inc. v. Larami Corp.*,
804 F.Supp. 555 (S.D.N.Y.1992), *aff'd,* 992 F.2d 469 (2d Cir. 1993) .....................................7

*Teri v. Spinelli*,
980 F. Supp. 2d 366 (E.D.N.Y. 2013) ...........................................................................4 n.2

*Tisone v. Berardino*,
2016 WL 7404556 (W.D. Pa. Dec. 22, 2016).................................................................4 n.2

*Underground Grp. LLC v Hali Power, Inc.*,
2012 WL 10007556 (N.Y. Sup. Ct. Mar. 22, 2012) ..............................................................15

*Wall v. CSX Transp., Inc.*,
471 F.3d 410 (2d Cir. 2006)................................................................................................20

*Wieder v. Chem. Bank*,
202 A.D.2d 168 (1st Dep't 1994) .............................................................................6, 14, 20

*Youssef v. Halcrow, Inc.*,
2011 WL 5244950 (S.D.N.Y. Nov. 1, 2011), *aff'd,* 504 F. App'x 5 (2d Cir.
2012) ....................................................................................................................7, 8, 12, 14

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
286 F. Supp. 3d 634 (S.D.N.Y. 2017)..................................................................................19

**Statutes**

15 U.S.C. § 1094 ..................................................................................................................18

15 U.S.C. § 1116(d)(1)(B)(i) ...............................................................................................19

15 U.S.C. § 1117(b) ............................................................................................................19

N.Y. Gen. Bus. Law §§ 349 and 350 .............................................................................10, 11

**Other Authorities**

3 J. McCarthy, *Trademark and Unfair Competition* .§ 24:92 (4th ed. 2002) ..............................10

Defendants Stellex Capital Management LP, Stellex Capital Management LLC (together, "Stellex") and J. Anthony Braddock respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiffs Great Mill Rock LLC ("GMR"), Christopher Whalen and Adi Pekmezovic (together with GMR, "Plaintiffs").

## PRELIMINARY STATEMENT

Whalen and Pekmezovic were for eighteen months employed by a wholly owned subsidiary of Stellex known as Mill Rock Capital Management LLC ("Mill Rock"). Pursuant to the Memorandum of Understanding ("MOU") that each signed regarding their employment, their responsibilities included developing the branding, naming, and other intellectual property for Mill Rock. The trademarks at issue here – the **MILL ROCK** word mark and the **MILL ROCK CAPITAL** and Design mark (the "Trademarks") – were first used by Mill Rock while Whalen and Pekmezovic were its employees, and thus that intellectual property belongs not to them but rather to their former employer, Mill Rock. Stellex owns Mill Rock and thus could not have committed trademark infringement, conversion, or the other claims lodged by Plaintiffs.

Plaintiffs tacitly acknowledge that their prior status as employees is fatal to their claims because they run away from it. Characterizing as "nonbinding" the document they signed and pursuant to which they were paid, given office space, provided health insurance, and otherwise supported by Stellex, Plaintiffs contend that their relationship with Stellex was instead governed by an "oral agreement", and that Mill Rock's use of the Trademarks during their tenure as employees was pursuant to some "limited and revocable license" orally extended by them to their employer. But the Complaint alleges no conversations where Stellex agreed to ignore the signed MOU, and sheds no light on the terms for this purported oral license. Plaintiffs cannot simply intone the words "oral agreement" to evade the contract they signed. And it does them no good in any case because, whether pursuant to the MOU or some other purported "interim arrangement",

Whalen and Pekmezovic were employees of Mill Rock when the Trademarks were first used and registered. Accordingly, those marks belong to their employer: Mill Rock.

Even putting aside the MOU and the employment relationship, Plaintiffs' kitchen-sink Complaint fails to state any cognizable claim against Stellex, and contains no allegations of any actions that Mr. Braddock took that would support a claim of personal liability.

## STATEMENT OF FACTS[1]

### A.    The Parties

This is a straightforward case of an employer/employee relationship gone sour. Stellex is a private equity firm that invests in middle-market companies in North America and Europe. (¶¶6-7). Braddock is its chief financial officer and was its chief compliance officer. (¶8).

From the spring of 2018 until their termination in August 2019, Whalen and Pekmezovic were employees of Mill Rock, a wholly owned affiliate of Stellex. (¶¶36, 66; MOU, p. 1). GMR was formed as an investment vehicle of Whalen and Pekmezovic while they were employed by Mill Rock, and GMR's formation was paid for by Stellex. (¶¶40-41). GMR was formed in August 2018 – after Stellex had begun using the Trademarks. (¶¶35, 41).

### B.    The Parties Execute An MOU To Govern Plaintiffs' Employment.

In the summer of 2017, Stellex began discussions with Whalen and Pekmezovic regarding the possibility of hiring them to manage a new fund that Stellex was hoping to launch.

---

[1] Cites to "Ex. _" are to exhibits to the Declaration of John P. Coffey, dated May 28, 2020. Cites to "¶ " are to the Complaint (Ex. A). The MOUs signed by Whalen and Pekmezovic are Exs. B & C and, unless otherwise noted, referred to together as "MOU."  The Court may properly consider the MOUs, which are referenced by Plaintiffs in ¶¶23, 24, 25, 26, 51, 56, 57 of their pleading. *Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, 2014 WL 5585339, at *4-*5 (S.D.N.Y. Oct. 30, 2014) ("When presented with a motion to dismiss pursuant to Rule 12(b) (6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

(¶16). The parties began negotiating the terms of a memorandum of understanding that would govern Stellex's governance and ownership of the fund, the pertinent management entities, and the principal terms of employment for Whalen and Pekmezovic. (¶23; MOU, p. 1).

Whalen and Pekmezovic each signed an MOU on March 1, 2018. (MOU (Exs. B & C), p. 6). It contemplated that the name of the management entities would be "Adirondack Credit LLC" and "Adirondack Credit Management LP", but Stellex filed a change of name form with the Delaware Secretary of State in March 2018 changing those names to Mill Rock Capital Management LLC and Mill Rock Capital Management LP. (¶¶23, 35). Under the MOU, Stellex retained Whalen and Pekmezovic to lead and manage Mill Rock (MOU, p. 1 (defining them as the "Executives")), and they were to report to the Managing Partners at Stellex (*id.,* p. 2). The MOU set out the "Principal Terms of Employment for Each Executive," including their salary and bonus structure, health benefits, their prospective 25% carried interest, and expense reimbursement. (*Id.*). The MOU required Stellex to provide back-office and administrative infrastructure. (*Id.*, p. 4).

Importantly, the MOU states that part of the Executives' responsibility was the "Development of branding." (*Id.*, p. 3). This includes "Naming, logo and other creative works" as well as "Website construction." (*Id.*). The MOU also required that "all related Branding matters" be approved by "AC LLC" – defined as the general partner owned by Stellex. (*Id.*, pp. 1, 4). While the MOU contemplated that there would be final documentation of their agreement (*id.*, p. 1), the parties never executed any additional documentation beyond the MOU.

C.    **Plaintiffs Allege An Oral Agreement In Lieu of the MOU.**

Plaintiffs contend that the MOU was "nonbinding" and that their relationship with Stellex was governed instead by an oral "interim arrangement" and an oral "limited and revocable" license. (¶¶24, 26, 29-31, 37). The timing of these alleged oral agreements is far from clear: Plaintiffs have not identified any date or meeting in which these agreements were discussed, much

- 3 -

less agreed to. (¶¶26, 29-31). While Plaintiffs claim that they had an oral license with Stellex for the Mill Rock trademark prior to executing the MOU, no reference to this supposed oral license or Plaintiffs' interest in the trademark appears in the "Branding" (or any other) section of the MOU. (¶26). Plaintiffs claim that, by March 15, 2018 – only two weeks after the parties executed the MOU – the parties agreed to a substitute oral agreement. (¶35). Plaintiffs do not state who at Stellex agreed to any oral agreement; nor do they identify who at Stellex agreed to repudiate the MOU and when. (¶33). Of note, in a Complaint with over a dozen separate legal claims, Plaintiffs do not include any claim for breach of this oral agreement.

Plaintiffs allege that, as part of this supposed interim arrangement, Stellex agreed to pay Whalen and Pekmezovic a "fee" (not alleged to be different than the $350,000 annual salary prescribed in the MOU), and also grant them an economic ownership stake, provide administrative support and office space, reimburse their expenses, and fund Mill Rock – terms almost identical to the MOU. (¶29). The only difference between the MOU and Plaintiffs' alleged oral agreement is that Plaintiffs claim that, contrary to the MOU, they own the Trademarks and Stellex was granted only a limited license to use them. (¶¶26, 28-30). These experienced investment professionals (¶15) claim that they agreed to an oral license without any terms, negotiated payment, or written memorialization of that license. (¶26).

### D. Stellex Performs Under the MOU.

Whalen and Pekmezovic went to work for Stellex on April 30, 2018. (¶36). The Complaint maintains that they began working "with" Stellex on that date (*id.*), but as the W-2s attached at Exs. D and E demonstrate, they began working *for* Stellex, as employees.[2] Although

---

[2] Plaintiffs refer to their salaries as a "fee" in ¶29 and the Court may thus consider the W-2s. *See Teri v. Spinelli*, 980 F. Supp. 2d 366, 371-72 (E.D.N.Y. 2013) (considering W-2 in dismissing complaint); *Tisone v. Berardino*, 2016 WL 7404556, at *4 (W.D. Pa. Dec. 22, 2016) (same).

they now contend that it was due to some interim oral deal and not the MOU (¶¶27, 33-34),
Plaintiffs acknowledge that Stellex paid them (¶29); provided office space (*id.*); allowed them to
host investor meetings at Stellex (¶53); and introduced them to potential investors in the new fund
(¶61) – all of which were obligations of Stellex under the MOU. (MOU, pp. 1-2, 4).

For their part, Plaintiffs took steps to develop the branding and messaging as set
out in the MOU, including by drafting text (the "Website Text") that was to be used on the website
at the millrockcap.com domain name that Stellex had registered. (¶49). Plaintiffs acknowledge that
it was Stellex, not Plaintiffs, which paid the legal fees for the branding costs for the Trademarks
(¶44) – likewise consistent with the MOU. (MOU, pp. 3-4 ("Branding")).

### E.     The Parties First Use the Trademarks In Connection With the Stellex Fund.

The Complaint alleges that Plaintiffs "conceived" of the Mill Rock name, but there
is no allegation that they ever used the Trademarks before signing the MOU or before they started
working for Stellex. (¶26). Plaintiffs acknowledge that those marks were first used "in connection
with the Proposed Stellex Funds" while Whalen and Pekmezovic were at Mill Rock. (¶30).

### F.     Stellex Terminates Plaintiffs.

When it became evident that Plaintiffs would not be able to launch the fund,
because, among other reasons, Stellex's key investor base was not interested in investing with
Plaintiffs, Stellex offered Whalen and Pekmezovic an opportunity to become employees of Stellex
directly, rather than operating under Stellex's Mill Rock umbrella. (¶¶62-63). Plaintiffs refused,
and on August 16, 2019, Stellex sent Whalen and Pekmezovic a notice terminating their
employment, and informing them that Stellex would no longer be funding Mill Rock. (¶¶65-66).

It was after their termination that Plaintiffs for the first time asserted that they
owned the Trademarks – but even then, Plaintiffs made no reference to any purported oral
agreement or license. (¶67). Plaintiffs then registered and published a confusingly similar website

at the domain name millrock-cap.com that used the same Website Text which they had developed while employees of Mill Rock. (¶68). Plaintiffs' post-termination claim of ownership was a surprise to Stellex, which asserted that it, not Plaintiffs, owned the Trademarks. (¶69). Stellex and Plaintiffs filed competing applications for the Trademarks before the USPTO. (¶¶72, 75).

## ARGUMENT

I. **THE TRADEMARK CLAIMS SHOULD BE DISMISSED BECAUSE STELLEX OWNS THE TRADEMARKS AT ISSUE**

Plaintiffs' trademark claims (Counts I, IV, V, VI, VII, and IX) and its copyright claim (Count X) are not sustainable because the underlying Trademarks that Plaintiffs claim to own actually belong to Stellex, the owner of their former employer.

"[I]t is axiomatic that materials or products developed by an employee in the course of his or her employment, absent any agreement to the contrary, belong to his or her employer." *Wieder v. Chem. Bank*, 202 A.D.2d 168, 169 (1st Dep't 1994) (dismissing employee claim). *See also Eenkhoorn v. New York Tel. Co.*, 148 Misc.2d 999 (1st Dep't 1990) ("An employer will gain a shop right or irrevocable license to use an employee's invention or idea if the employee, in developing the idea, did so on his employer's time and with his machinery, material and money."). There are strong policy reasons behind this century-old law: namely, that an employer is the owner of the work product it pays for. *Standard Parts Co. v. Peck*, 264 U.S. 52, 59-60 (1924) (when an individual is employed "to devote his time to the development of process and machinery, and was to receive therefor a stated compensation," the resulting development is the property "of him who engaged the services and paid for them"). *See also Pullman Grp., LLC v. Prudential Ins. Co., of Am.*, 288 A.D.2d 2, 3 (1st Dep't 2001) (dismissing claim where "the alleged trade secrets were created by [plaintiff] while acting within the scope of his assigned duties as an employee . . . [and] were therefore owned by the employers *ab initio*") (collecting cases).

This is precisely the case here. The Trademarks – first used while Plaintiffs were

Mill Rock employees, paid by Stellex, working in Stellex's offices, with the assistance of Stellex's administrative staff – are rightfully owned by Stellex. Whether Plaintiffs' tenure at Mill Rock was pursuant to the signed MOU (as it was) or a result of some separate "interim arrangement" conceived for this litigation matters not. The Complaint acknowledges the Trademarks were first used while Whalen and Pekmezovic were working for Stellex. (¶¶30, 35, 36). Thus, the only party with standing to assert any claims related to those Trademarks is Stellex, the owner of the Mill Rock Trademarks.

This fact dooms all of Plaintiffs' trademark claims – which as explained below fail in any event for myriad other reasons.

## A. Count I: Federal Unfair Competition

This Count should be dismissed for the following additional reasons.

*First*, Plaintiffs do not allege that they own the trademark they seek to enforce. While the Complaint alleges that Plaintiffs "conceived" of the Trademarks prior to the MOU (¶26), the Lanham Act only offers protection for the earliest *use* of a mark. *See Talk To Me Prods., Inc. v. Larami Corp.*, 804 F.Supp. 555, 559 (S.D.N.Y. 1992) ("The exclusive right to a distinctive mark belongs to the one who first uses it in connection with a particular line of business."), *aff'd*, 992 F.2d 469 (2d Cir. 1993). The Complaint contains no allegation that Plaintiffs *used* the Trademarks in commerce before they worked for Stellex – on the contrary, the Complaint *admits* that the Trademarks were first used "in connection with the Proposed Stellex Funds." (¶30).

The MOU likewise makes clear that Plaintiffs were employees and thus their "work product belonged to [their] employer." *Youssef v. Halcrow, Inc.*, 504 F. App'x 5, 6 (2d Cir. 2012). The MOU specifically addresses branding, logo, website construction, and "other creative works." (MOU, pp. 3-4). The Branding section assigns to Plaintiffs certain *responsibilities* regarding the development of intellectual property; it does not convey to Plaintiffs any *interest* in that intellectual

property. (*Id.*). This ends the matter. Plaintiffs cannot bring claims for trademark infringement and related claims when the agreement they signed granted them no rights to those Trademarks. *See Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*, 2002 WL 1560789, at *6 (S.D.N.Y. July 15, 2002) (trademark claim barred by parties' contract); *Youssef v. Halcrow*, *Inc.,* 2011 WL 5244950, at *2 (S.D.N.Y. Nov. 1, 2011) ("[A]s a matter of law, a plaintiff lacks such standing to assert claims directed toward his purported ownership in intellectual property created in the scope of his employment.") (quotations and citations omitted), *aff'd,* 504 F. App'x 5 (2d Cir. 2012).

The Second Circuit has been firm that an employee cannot bring a claim for work product that belongs to his employer. In *Youssef*, 504 F. App'x at 6, the Second Circuit affirmed dismissal of a complaint remarkably similar to the one here. There, the employee had alleged that he was the sole owner of an engineering design, but the Court held that his allegation was "merely a legal conclusion masquerading as a factual conclusion, which is insufficient to defeat a motion to dismiss." *Id.* (citations omitted). That complaint's factual allegations made clear that the employee was acting within the scope of his employment and as such, the plaintiff's "work product belonged to his employer." *Id.* Here, Plaintiffs' "logo" and "website construction" were among their specific responsibilities under the MOU. That bars Plaintiffs' claim.

*Second*, Plaintiffs' claim is, at best, an attack on Stellex's ownership of the trademark – not trademark infringement. Plaintiffs do not allege that Stellex advertised an investment advisory service "Mill Rock" which is different from the true Mill Rock. There are no similar marks here for the Court to compare. As such, this case "is not one of consumer confusion that can be relied upon to support a Lanham Act claim, but a case alleging breach of contract. . . no claim for trademark or copyright infringement or unfair competition will lie." *Kitty Walk Sys., Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306, 310 (E.D.N.Y. 2006).  Here, Plaintiffs assert that Stellex is violating a purported oral license by continuing to advertise Mill Rock. (¶¶67, 83). But

- 8 -

that is a potential contract claim – which Plaintiffs tellingly do not assert – not a claim for trademark infringement.

This Court previously applied this principle in *Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, 2014 WL 5585339, at *6 (S.D.N.Y. Oct. 30, 2014). There, the plaintiff sought to hold the defendant liable for trademark infringement for violating the parties' agreement by continuing to use the trademark after the parties had parted ways. But the Court held that "the Lanham Act is designed to address the registration and infringement of trademarks, not ownership disputes arising out of contracts." *Id.* (citing *Gibralter, P.R., Inc. v. Otoki Grp., Inc.*, 104 F.3d 616, 619 (4th Cir. 1997)). Noting that, like here, the defendant's continued use of the trademark after the parties had separated did not constitute customer confusion, the Court recognized that such a claim does not allege "the type of harm § 43(a) was enacted to prevent: customer confusion." *Id.* at *4. The Court refused to allow the plaintiff to "transform this breach-of-contract claim into a claim for trademark infringement" and dismissed the Lanham Act claims with prejudice – as it should here. *See also Silverstar Enters., Inc. v. Aday*, 537 F. Supp. 242 (S.D.N.Y. 1982) (dismissing 1125(a) claim that was "essentially a contract dispute" between licensee and licensor).

*Third*, Plaintiffs have failed to allege injury from this supposed infringement. They do not identify any business that they lost because of the MILL ROCK CAPITAL Logo on Stellex's website. Indeed, the Complaint alleges that Plaintiffs have reviewed "nearly 100 transactions" since leaving Stellex (¶86), and no damages are linked to any action by Stellex. And the two potential transactions that Plaintiffs do identify were initiated when, according to the Complaint, Mill Rock was still affiliated with Stellex. (¶¶91-92). No injury?  No claim. *See Casper Sleep, Inc. v. Derek Hales & Halesopolis LLC*, 2016 WL 6561386, at *7 (S.D.N.Y. Oct. 20, 2016) (McMahon, J) (dismissing claim where plaintiff failed to plead how defendant's statement that parties were affiliated harmed plaintiff or took away business).

*Finally*, Section 1125(a) protects unregistered marks only if they are "widely recognized by the general consuming public of the United States." *Small Bus. Bodyguard, Inc.*, 2014 WL 5585339, at *7 (dismissing claim where complaint did not allege that mark was recognized "by a broad swathe of this country's general consuming public"). "Moreover, the degree of fame required for protection under the [act] ... must exist in the general marketplace, not in a niche market ... Thus, fame limited to a particular channel of trade, segment of industry or service, or geographic region is not sufficient to meet that standard." *Id.* (citing *Christopher D. Smithers Found., Inc. v. St. Luke's–Roosevelt Hosp. Ctr.*, 2003 WL 115234, at *5 (S.D.N.Y. Jan. 13, 2003)). "Because of the high levels of recognition required, very few trademarks qualify as famous marks." *Id.* (citing 3 J. McCarthy, *Trademarks & Unfair Competition*, § 24:92 (4th ed. 2002)).

This issue is not a close call. The Complaint contains a lone, conclusory paragraph that the undefined "market" "understood" that Mill Rock referred to Whalen, Pekmezovic, and GMR. (¶59). The Complaint itself recognizes that GMR was formed in August 2018, months after Stellex formed Mill Rock and Plaintiffs had started working for Mill Rock, and alleges that GMR did only three deals between formation and the parties' parting of ways. (¶¶35-36, 41, 51-55). There is not a single factual allegation which permits the inference that Mill Rock is recognized "by a broad swathe of this country's general consuming public."

### B.   Counts IV & V: Sections 349 and 350 of New York's General Business Law

Sections 349 and 350 of New York's General Business Law ("GBL") are consumer protection statutes but, as with the trademark claims above, the pertinent claims (Counts IV and V) cannot survive dismissal because, as explained above, Stellex owns the Trademarks.

Cases evaluating these GBL provisions in the context of trademarks uniformly establish that trademark infringement claims are "not cognizable under these statutes unless there

is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2002). The Complaint makes the conclusory allegation that there is "harm to the public interest" (¶113), but that is not supported by any facts. And Plaintiffs' allegations concerning counsel at Greenberg Traurig and the USPTO (¶111) – neither of which is located in New York – fail to meet the territoriality requirement of the statute. *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 322-25 (2002).

Nor can Plaintiffs bring a consumer fraud claim based on the alleged significant impact on Plaintiffs' business (¶87) because the statute's focus is on consumers. *See RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, 2015 WL 5008762, at *5 (S.D.N.Y. Aug. 24, 2015) (where plaintiff alleged "damage to its business, reputation and goodwill . . . the core of that claim is harm to its business as opposed to consumers" and dismissing claim); *MDB LLC v. Hussain*, 2016 WL 1267793, at *6 (S.D.N.Y. Mar. 29, 2016) ("Because Hussain has only alleged harm to herself and the FASHION DIGITAL mark, she has not alleged the required element of public harm. Her claims under Sections 349 and 350 are therefore dismissed with prejudice.").

Finally, Plaintiffs have failed to allege two other elements: (1) how Stellex's statement that Mill Rock was its affiliate (as stated in the MOU) is materially misleading. *See Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (to state claim under GBL § 349 or § 350, plaintiff must allege that defendant "engaged in conduct that is materially misleading"); and (2) Plaintiffs nowhere allege that they (or anyone) actually relied on Stellex's purportedly deceptive conduct – an additional element for § 350. *Rodriguez v. It's Just Lunch, Int'l*, 2010 WL 685009, at *10 (S.D.N.Y. Feb. 23, 2010).

### C.   Count VI: Common Law Trademark Infringement

Count VI for common law trademark infringement is subject to the same standards

as the Lanham Act and should be dismissed for the same reasons as Count I. *See* pp. 7-10 above. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F.Supp.2d 448, 456 (S.D.N.Y. 2005) ("[T]he elements necessary to prevail on [a] cause[ ] of action for trademark infringement ... under New York common law mirror[s] the Lanham Act claims." (quotations and citation omitted)).

### D.      Count VII: Common Law Unfair Competition

Count VII fails for the same reasons that Plaintiffs' Lanham Act claim fails: They do not own the Trademarks and a dispute about ownership is a contract claim. *See* pp. 7-10 above. *Youssef*, 2011 WL 5244950, at *3 (dismissing claim for unfair competition where work belonged to employer, not employee); *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 150 (2d Cir.1997) ("[T]o recover for unfair competition [a plaintiff] must show ... an association of origin by the consumer between the mark and the first user."); *RCA*, 2015 WL 5008762, at *5 (dismissing unfair competition claim that was in essence a contract claim for breach of license agreement).

Count VII fails for an additional reason that Plaintiffs have not alleged that Stellex acted in bad faith. *Id.* ("Under New York law, common law unfair competition claims closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent."). The words "bad faith" do not appear anywhere in the Complaint; indeed, Plaintiffs acknowledge that Stellex believed it owned the marks. (¶69). *See MDB LLC*, 2016 WL 1267793, at *6 (no bad faith where defendants believed they were entitled to use the mark, and dismissing claim).

### E.      Count IX: Declaration of Trademark Ownership

Count IX should be dismissed as duplicative. It is premised on the substantive claims in Counts I, VI and VII, and solely involves issues that will be resolved in the course of litigation of those causes of action. *See Amusement Industry, Inc. v. Stern*, 693 F.Supp.2d 327, 359 (S.D.N.Y. 2010) ("Declaratory judgment actions will be dismissed where they are duplicative of

other relief sought in a complaint because they will, of necessity, be resolved in the course of the litigation of the other causes of action.") (quotation and citation omitted); *DIRECTV Latin America, LLC v. Park 610, LLC*, 691 F.Supp.2d 405, 433-34 (S.D.N.Y. 2010) (same). In addition, Count IX also fails for the reasons that Counts I, VI and VII fail. *See* pp. 7-12 above.

### F.    Count X: Declaration of Copyright Ownership

Count X asks the Court to declare that Plaintiffs own a copyright in the Website Text. (¶¶145-46). But just because it was Plaintiffs' *job* to do "website construction" (MOU, p. 3) does not mean that they *own* that work product. That is precisely the argument the Supreme Court has rejected for almost 100 years. *See Standard Parts Co. v. Peck*, 264 U.S. at 60 (rejecting employee's assertion that "though stimulated to services by the [employer] and paid for them, doing nothing more than he was engaged to do and paid for doing, that the product of the services was so entirely his property . . . [that it could] be used in competition with the one who engaged him and paid him."). As the Complaint concedes, Whalen prepared this text of a Mill Rock website, intending to publish it on the domain name that Stellex had registered, millrockcap.com. (¶49). That Stellex used its employee's work product is part of what Stellex paid for. *See* pp. 6-8 above.

Count X also fails for a more fundamental reason: Plaintiffs cannot bring a copyright claim without a valid registration in the Website Text. *See Small Bus. Bodyguard, Inc.*, 2014 WL 5585339, at *4 ("Without a valid registration by the date the lawsuit is commenced, a party lacks standing to sue for copyright infringement.") (citation omitted); *Johnson v. Magnolia Pictures LLC*, 2019 WL 4412483, at *3 (S.D.N.Y. Sept. 16, 2019) (dismissing declaratory judgment claim where copyright was not registered).

### G.    Plaintiffs' Oral License Claim Fails

Perhaps recognizing that they have no ownership rights in the Trademarks they first used as employees of Stellex, Plaintiffs allege (incongruously) that, before the MOU was executed,

they had conveyed to Stellex an undocumented "limited and revocable license" and then, shortly after they signed the MOU (which was silent as to this purported license), the parties pivoted to proceed instead under an "interim oral agreement" rather than the MOU. (¶¶26, 29). Even Plaintiffs recognize the flimsiness of this argument – as noted above, they do not assert claims for breach of contract or breach of license.

These purported oral agreements matter not. Stellex's ownership rights in the Trademarks are not only based on the MOU but also on the fact that the marks were first used in connection with Plaintiffs' employment by Stellex. *See* pp. 6-8 above. Plaintiffs now want a "get-out-of-contract-free" card and claim the MOU was "non-binding" (¶24), but that allegation is not only conclusory but academic: whether binding or not, the MOU contains three facts which foreclose Plaintiffs' claims here: Plaintiffs were employees of Mill Rock; Stellex owned Mill Rock; and the parties nowhere agreed that Plaintiffs would own the Trademarks which they used as part of their "Branding" responsibilities in the MOU. (MOU, pp. 1, 3). *See Wieder*, 202 A.D.2d at 169 ("although not a contract binding upon the parties," the court looked at employee manual to determine that employee had no rights and dismissing claim); *Youssef*, 504 F. App'x at 6 (district court properly considered addendum to plaintiff's employment application which was "integral" to plaintiff's allegation that he, not his employer, was the owner of the work product).

In any event, Plaintiffs' effort to avoid the MOU and rely on "oral" agreements fails for the following additional reasons:

*First*, Plaintiffs are bound to the MOU that they signed. *See Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 307 (S.D.N.Y. 2011) (term sheet binding when "[t]he plain language of the Term Sheet as well as the parties' signatures evidence the parties' mutual intent to commit to its terms"). While the parties intended to have final documentation memorializing their agreement, it is "well-settled that the mere fact that the parties contemplate memorializing their

agreement in a more formal document does not prevent their informal agreement from taking effect prior to that event." *Id.* (citing *Bear Stearns Inv. Prods., Inc. v. Hitachi Auto. Prods. (USA), Inc.*, 401 B.R. 598, 618 (S.D.N.Y. 2009)). Notably, the MOU contains no reservation of rights that prevented the contract from becoming binding once executed by the parties. *Id.* (term sheet binding where "there was nothing in the writing even approximating a reservation of the right not to be bound in the absence of a more formal contract. Indeed, nothing in the language of the Term Sheet other than the final line calling for a 'formal contract' suggests that the parties did not intend to be bound."). Plaintiffs provide no factual allegations to explain why sophisticated parties would take the trouble to negotiate and sign something "non-binding."

*Second*, "[p]artial performance is an important indicia of an intent to be bound by a writing." *Underground Grp. LLC v Hali Power, Inc.*, 2012 WL 10007556, at *6 (N.Y. Sup. Ct. Mar. 22, 2012) (collecting cases). Plaintiffs concede that Stellex performed many of the obligations prescribed by the MOU, including providing administrative support and office space, introducing them to investors, paying them, and even paying expenses in connection with the Trademarks. (*E.g.*, ¶¶29, 34, 35, 53, 61). Such partial performance further confirms that the MOU was binding. *See Underground Grp. LLC*, 2012 WL 10007556, at *6 (MOU binding despite intent to have additional documentation where parties performed under MOU, even if performance was partial); *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 425-26 (S.D.N.Y. 2012) (MOU was binding where plaintiff paid defendant under MOU).

*Third*, Plaintiffs cannot rely on purported oral agreements when they had a signed agreement. The parol evidence rule bars Plaintiffs' claim that the parties entered into a "limited and revocable license" in August 2017 "*prior* to executing the MOU" that was inexplicably ignored when the MOU discussed the "branding" for Mill Rock. (¶26 (emphasis in original)). Courts routinely reject such claims. For example, in *Jofen v. Epoch Biosciences, Inc.*, 2002 WL

- 15 -

1461351 (S.D.N.Y. July 8, 2002), *aff'd*, 62 F. App'x 410 (2d Cir. 2003), a written agreement contained detailed specification of the compensation that the employee was to receive for his services – which did not include rights the employee claim existed under a prior oral agreement. Under the parol evidence rule, the Court dismissed the complaint: "The rights that the plaintiff is claiming are part of the same subject matter as the [a]greement, and . . . [t]he [a]greement also does not mention any prior oral agreement to grant [plaintiff] this right." *Id.* at *6; *see also Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 2009 WL 935665, at *17 (S.D.N.Y. Apr. 7, 2009) (parol evidence rule bars an "alleged oral agreement [which] cannot be read compatibly with [the parties'] written agreement."). The law does not allow Plaintiffs to alter so easily the terms of a written contract that displeases them.

Nor can Plaintiffs plausibly contend that, days after they signed the MOU, the parties agreed simply to ignore it and proceed instead under an oral interim agreement. (¶¶28-33). Plaintiffs do not allege that there was any new consideration for this sudden about-face. The "exchange" for "Whalen and Pekmezovic's services in helping to establish the Proposed Stellex Funds" (¶29) was exactly what had been negotiated in the MOU. (¶23). *See Jofen*, 2002 WL 1461351, at *5 (dismissing claim that parties agreed to oral modification where there was no new consideration).

*Finally*, Plaintiffs have not come close to providing definitive allegations for either an oral license or oral interim agreement. They offer no specifics for when the parties discussed this oral agreement, much less entered into it. Plaintiffs do not state who at Stellex agreed to any oral agreement. There were no terms as to duration or payment of any oral license, a conspicuous departure from what the parties had agreed to in the MOU. This further dooms Plaintiffs' purported oral contracts. *See D & N Prop. Mgmt. & Dev. Corp., Inc., v. Copeland Companies*, 127 F. Supp. 2d 456, 463-64 (S.D.N.Y. 2001) (McMahon, J) (oral agreement insufficiently definite to create

contract since there was no agreed price nor a time frame for performance).

In short, Plaintiffs have alleged no basis for the Court to ignore the import of the MOU. And even if the Court were to credit Plaintiffs' conclusory oral "interim arrangement" allegations over the signed MOU (which it should not), that would in no way disturb the dispositive fact that Whalen and Pekmezovic were nonetheless employees of Mill Rock when the marks were first used, and thus the owner of the Trademarks is Mill Rock, and its owner Stellex.

## II.      PLAINTIFFS' ACTIV CAPITAL CLAIMS FAIL

Counts II and III seek to hold Stellex liable for allegedly infringing on the ACTIV CAPITAL trademark, which appears in but one paragraph in the Complaint's factual allegations. (¶84). Those claims also fail.

### A.      Count II: Federal Trademark Infringement

Count II fails for the same reasons that Plaintiffs cannot claim the Trademarks as their own: Mill Rock, not GMR, was the first to use the ACTIV CAPITAL trademark. According to the federal trademark registration for ACTIV CAPITAL (the "Registration," attached at Ex. F[3]), the ACTIV CAPITAL mark was first used on May 15, 2018 – which was after Plaintiffs had begun working for Stellex and before GMR was even created (¶¶36, 41). *See* pp. 6-8 above (employees' work while being paid by employer belongs to employer). Indeed, the specimen of use submitted with the application for the Registration notes that the ACTIV CAPITAL mark is being used in connection with Mill Rock, which is "affiliated with Stellex Capital Management LP" (Ex. F) – and thus the statement on Stellex's website is accurate. (¶84). Notably, Plaintiffs do not allege that their purported license agreement related at all to the ACTIV CAPITAL mark. (¶28).

Count II also fails for a separate reason: Plaintiffs have failed to allege that they

---

[3] The U.S. Trademark Registration for ACTIV CAPITAL (Ex. F), referenced in ¶84, is a public record subject to judicial notice. *See Small Bus. Bodyguard, Inc.*, 2014 WL 5585339, at *4-*5.

have a protectable mark in ACTIV CAPITAL. Plaintiffs have only registered the words "ACTIV CAPITAL" on the Supplemental Register, which is reserved for nondistinctive marks. (Ex. F). This does not afford Plaintiffs the presumption of validity and protection that registration on the Principal Register provides. *See* 15 U.S.C. § 1094; *see also Rpost Holdings, Inc. v. Post*, 2011 WL 13128431, at *4 (C.D. Cal. July 12, 2011) (plaintiff failed to state trademark infringement claim because mark was only registered on Supplemental Register). In order to sustain a claim for trademark infringement for a mark that is registered on the Supplemental Register, Plaintiffs were required to allege that the mark obtained secondary meaning – which they have not. *See id.*

Moreover, Plaintiffs cannot bar Stellex – or anyone else in the private equity industry – from using the words "active capital." "The reason is plain enough. To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 13 (2d Cir. 1975). Indeed, the Registration includes a disclaimer of the generic term CAPITAL, acknowledging that Plaintiffs cannot claim exclusive rights in the term "Capital" for investment advisory or related services. The addition of the descriptive word "active" does not transform the nondistinctive phrase into a protectable trademark. *See Energy Intelligence Grp., Inc. v. UBS Fin. Servs., Inc.*, 2009 WL 1490603, at *7 (S.D.N.Y. May 22, 2009) (dismissing trademark claim for name "which simply gives itself the name of the trade [] plus [one] word") (citing *CES Publ'g Corp.,* 531 F.2d at 14).

Finally, Count II fails because Stellex is not using the phrase "ACTIV CAPITAL" and only lists the correctly-spelled words "Active Capital" on its website. (¶84). *See, e.g, 1-800 Contacts, Inc., v. WhenuCom, Inc.*, 414 F.3d 400, 412 (2d Cir. 2004) ("use must be decided as a threshold matter because ... no such activity is actionable under the Lanham Act absent the 'use'

- 18 -

of a trademark.") (citations omitted); *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 443 (S.D.N.Y. 2016) ("a slight misspelling of a word will not generally turn a descriptive word into a nondescriptive mark.") (citation omitted).

  **B.**  <u>**Count III: Federal Counterfeiting**</u>

    Plaintiffs have failed to allege a key element for their counterfeiting claim. The Lanham Act defines a counterfeit mark as "a counterfeit of a mark that *is registered on the principal register* in the United States Patent and Trademark Office . . . ." 15 U.S.C. § 1116(d)(1)(B)(i) (emphasis added). As noted above, ACTIV CAPITAL is not registered on the Principal Register, and therefore this Count and Plaintiffs' request for treble damages under 15 U.S.C. § 1117(b) should be dismissed. *See C & L Int'l Trading Inc. v. Am. Tibetan Health Inst., Inc.*, 2013 WL 6086907, at *4 (S.D.N.Y. Nov. 19, 2013) (dismissing counterfeiting claim where mark registered on Supplemental Register, not the Principal Register).

**III.**  <u>**THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION**</u>

    Once the federal claims are properly dismissed (Counts I, II, III & X), the Court should decline to exercise supplemental jurisdiction over the Complaint's remaining claims since there is no other basis for federal jurisdiction.

    The Second Circuit has instructed that District Courts generally should decline to exercise supplemental jurisdiction over remaining claims if federal claims are eliminated in the early stages of litigation. *See Klein & Co. Futures, Inc. v. Bd. of Trade of the City of N. Y.*, 464 F.3d 255, 262 (2d Cir. 2006) (citing cases); *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 651 (S.D.N.Y. 2017). Such a determination should be guided by values of judicial economy, convenience, fairness, and comity, *i.e.*, the "*Cohill* factors." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Those factors support dismissal here since the Court has not yet expended significant judicial resources, and there is no inconvenience or inequity by

- 19 -

requiring a New York State court to interpret its own law. *See, e.g.*, *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 446 (S.D.N.Y. 2019) (McMahon, J) (declining to exercise supplemental jurisdiction once trademark claim dismissed); *Bangkok Bangkok Imp. & Exp. Inc. v. Jamtan African Am. Mkt. Corp.*, 2016 WL 8814348, at *5 (S.D.N.Y. June 17, 2016) (McMahon, J) (same).

## IV.   IF EVALUATED HERE, PLAINTIFFS' REMAINING CLAIMS SHOULD NONETHELESS BE DISMISSED.

### A.   Count VIII: Conversion

Count VIII asserts that Defendants wrongfully misappropriated the Trademarks. (¶134). But as set forth above, Stellex owns the Trademarks – and Stellex cannot convert property it already owns. *See Wieder*, 202 A.D.2d at 169 (dismissing employee conversion claim where "there is nothing to indicate he has any ownership interest in the materials in question."); *Onanuga v. Pfizer, Inc.*, 2003 WL 22670842, at *4 (S.D.N.Y. Nov. 7, 2003) (McMahon, J) (dismissing conversion claim brought by former employee who did not have "sufficient possessory interest" to maintain claim of conversion against his former employer).

In any event, this claim fails for a more basic reason: the law does not recognize conversion for trademarks. *See Grgurev v. Licul*, 229 F. Supp. 3d 267, 286-87 (S.D.N.Y. 2017) (because a "trademark is not tangible personal property, but rather is intangible intellectual property having no existence apart from the good will of the product or service it symbolizes, it cannot support a claim of conversion.") (collecting cases).

### B.   Count XI: Fraudulent Inducement

Count XI alleges that Stellex fraudulently induced Whalen and Pekmezovic to leave their prior employment and enter into the MOU or purported oral agreement with Stellex. (¶150). As a threshold matter, Plaintiffs cannot state a claim for fraudulent inducement by conclusorily alleging that Stellex did not intend to perform. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("general allegations that defendant entered into a contract while lacking the intent to

- 20 -

perform it are insufficient to support [a fraud] claim.") (citation omitted). Stellex's statement that it would invest in the fund is the same bargained-for benefit that the parties had agreed to, be it in the MOU (¶23) or Plaintiffs' alleged oral agreement (¶29), and does not support a separate fraudulent inducement claim. *See, e.g.*, *LCS Grp., LLC v. Shire Dev. LLC*, 2019 WL 1234848, at *5 (S.D.N.Y. Mar. 8, 2019) ("[A] fraud action cannot be maintained when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.") (internal quotation marks and citations omitted).

Moreover, Plaintiffs fail to plead with the specificity required by Rule 9(b). They allege no particularized allegations that Stellex acted with fraudulent intent – and why would Stellex invest money and time into attempting to raise a fund, paying Plaintiffs' salaries and related support for eighteen months, if it secretly wanted *in advance* for the fund to fail? Plaintiffs have not "alleged precisely what was told to them on what occasion nor any sufficient basis for inferring that the speaker knew what was said was false." *See Sony Fin. Servs., LLC v. Multi Video Grp., Ltd.*, 2003 WL 21396690 at *2 (S.D.N.Y. June 17, 2003); *see also Ebusiness, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Solutions, LLC*, 2009 WL 5179535, at *11 (S.D.N.Y. Dec. 29, 2009).

Finally, Plaintiffs do not allege reasonable reliance on Stellex's statements. They allege that they relied on statements that Stellex could "quickly raise over $250 million for the new funds" (¶148), but no "experienced investment fund managers" (¶15) would take Stellex's expression of the past success of its funds as a concrete promise meant to induce reliance. *See Stone v. Sutton View Capital, LLC*, 2017 WL 6311692, at *4 (S.D.N.Y. Dec. 8, 2017) (dismissing fraudulent inducement claim where "[a]s a matter of law (and common sense), th[e] reliance was not reasonable."). Plaintiffs also allege that Stellex stated that the New York State Common Retirement Fund, Stellex's largest investor, would serve as the "anchor investor" for the new funds (¶148), but plainly, Stellex was not committing (and could not commit) on behalf of that fund. *See*

- 21 -

*LCS Grp.*, 2019 WL 1234848, at *5 ("[I]t is settled law that a promise of future action cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made.") (citation omitted). And the remaining two statements in ¶148 – that Stellex would support the proposed new fund (as it did by funding Mill Rock for 18 months) and that Stellex had a highly supportive group of investors – are not alleged to be false.

C.     **Count XII: Conversion**

The elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights. *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006). Plaintiffs do not adequately allege either element.

*First*, Plaintiffs do not allege that they owned the emails sent on the Mill Rock email server, and under the terms of their employment, those emails belonged to Stellex. *See* Section IV.A, above.

*Second*, it is undisputed that Stellex's original possession of these emails was lawful, and "[f]or an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse." *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007). The Complaint nowhere alleges that Plaintiffs demanded these emails and Stellex refused, thus barring this claim. (¶80). *See Bandler v. BPCM NYC, Ltd.*, 2014 WL 5038407, at *14-15 (S.D.N.Y. Sept. 29, 2014) (dismissing claim where "Plaintiffs chose to store their electronic files on Defendants' servers and their emails on Defendants' email system" and never demanded their return), *aff'd sub nom.*, 631 F. App'x 71 (2d Cir. 2016).

And there is a separate reason for dismissal: Stellex only came to possess Plaintiffs' property through its agreement with Plaintiffs (whether under the MOU or Plaintiffs' supposed

oral agreement) and therefore, any claim belongs in contract, not tort. *See Camp Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894, at *9 (S.D.N.Y. Apr. 16, 2007) (McMahon, J) (dismissing conversion claim where defendant owed no duty to plaintiff beyond contract); *Pandisc Music Corp. v. Red Distrib., LLC*, 2005 WL 646216, at *1 (S.D.N.Y. Mar. 18, 2005) (dismissing conversion claim where "defendant's possession of plaintiffs' property was governed not by the independent duties owed by one citizen to another under general tort principles, but by a specific agreement negotiated between the parties.").

D.   **Count XIII: Tortious Interference With Prospective Economic Advantage**

Count XIII alleges that Plaintiffs lost out on two deals that they were negotiating on behalf of Mill Rock, one with Cabot Corporation ("Cabot") and one with Hub Folding Box Company, Inc. ("Hub"). (¶¶91-92). In order to state a claim for tortious interference with prospective business advantage under New York law, a party must allege: "(i) business relations with a third party; (ii) defendants' interference with those business relations; (iii) that defendants acted with the sole purpose of harming the plaintiff (i.e. with malice) or used dishonest, unfair, or improper means; and (iv) injury to the relationship." *Camp Summit*, 2007 WL 1152894, at *14 (citation omitted). Plaintiffs' claim does not meet any of these elements.

*First*, Plaintiffs' "relations" were not their own and Stellex is no "third party" here. As set forth above, Plaintiffs were employed by Mill Rock and cannot bring a claim against Stellex for "interfering" with the business relations for its own affiliate. *See, e.g., ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (for tortious interference, defendant must be a "third part[y] unrelated to the contract"); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (plaintiffs lacked standing to bring tortious interference claim when they were negotiating on behalf of company).

*Second*, Plaintiffs do not allege how Stellex supposedly interfered with those

relationships. The Complaint nowhere states that Stellex ever contacted Cabot or Hub in an attempt to interfere with Plaintiffs' relationship or that Plaintiffs were unable to get in touch with Cabot or Hub after their termination. *See In re Elysium Health-Chromadex Litig.*, 2018 WL 4907590, at *13 (S.D.N.Y. Sept. 27, 2018) (McMahon, J) (no tortious interference claim where plaintiff did not plead that defendants "direct[ed] some activities toward[ ] [a] third party and convince[d] the third party not to enter into a business relationship" with plaintiff) (citation omitted).

      *Third*, Stellex's retention of company emails after an employee is terminated – standard company policy – and its good faith belief that it owned the Trademarks that it had paid for comes nowhere close to the "bad faith" requirement necessary to state a tortious interference claim. *Ace Arts, LLC v. Sony/ATV Music Publ'g., LLC*, 56 F. Supp. 3d 436, 453 (S.D.N.Y. 2014) (no malice where defendant believed it owned copyright); *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) ("Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations.").

      *Finally*, Plaintiffs' negotiations with Cabot and Hub may have failed for many reasons. *See Camp Summit*, 2007 WL 1152894, at *14 (tortious interference claim was "speculative" where plaintiff did not allege "as she must, that she would have executed specific contracts but for interference by" defendant) (internal quotation marks and citation omitted). Plaintiffs do not allege that those deals would have closed "but for" Stellex's actions. (¶¶91-92).

## V.   THE COMPLAINT DOES NOT PLEAD A CLAIM AGAINST J. ANTHONY BRADDOCK

      The Complaint is also fatally defective as to Braddock, against whom Plaintiffs assert Count VII (common law unfair competition), Count VIII (conversion of trademark), and Count XIII (tortious interference). But Braddock is not alleged to have promised Plaintiffs an ownership stake in Mill Rock. (¶37). Plaintiffs do not allege that they had any discussions with

Braddock concerning this purported oral license agreement or oral interim agreement. (¶¶26, 29-30). Braddock is not alleged to have spoken with Cabot or Hub, or any other third party prospective client of Plaintiffs. (¶¶91-92). And the Complaint does not state any facts – not one – about anything that Braddock did outside of his corporate capacity. *See Mobile Data Shred, Inc. v. United Bank of Switzerland*, 2000 WL 351516 at *7 n. 9 (S.D.N.Y. Apr. 5, 2000) ("officers, directors or employees of a corporation are not personally liable ... if they act on behalf of the corporation and within the scope of their duties") (citations omitted).

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated:  New York, New York
       May 28, 2020

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:  /s/ John P. Coffey
John P. Coffey
Adina C. Levine
Nathan Schwartzberg
1177 Avenue of the Americas
New York, New York  10036
Tel: (212) 715-9100
Fax: (212) 715-8100
scoffey@kramerlevin.com
alevine@kramerlevin.com
nschwartzberg@kramerlevin.com

*Attorneys for Defendants Stellex Capital Management LP, Stellex Capital Management LLC and J. Anthony Braddock*